Robert SCHISLER, et al., on behalf of themselves and all others similarly situated, Plaintiffs–Appellees–Cross–Appellants,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant–Cross–Appellee.

Jonathan ALDRICH, et al., on behalf of themselves and all others similarly situated, Plaintiffs–Appellees–Cross–Appellants,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant–Cross–Appellee.

Nos. 786, 909, 773, 900, Docket 92–6232, 92–6234, 92–6233, 92–6243.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1993.

Decided Aug. 23, 1993.

Frank A. Rosenfeld, Atty., Civil Div., Appellate Staff, Dept. of Justice, Washington, DC (William Kanter, Atty., Civil Div., Appellate Staff, Dept. of Justice, Stuart M. Gerson, Asst. Atty. Gen., Washington, DC, Dennis C. Vacco, U.S. Atty., W.D.N.Y., Buffalo, NY, Charles A. Caruso, U.S. Atty., D. Vt., Rutland, VT, of counsel), for defendant-appellant-cross-appellee.

Bryan D. Hetherington, Rochester, NY (Catherine M. Callery, Monroe County Legal Assistance Corp., Edwin J. Lopez–Soto, Greater Upstate Law Project, Rochester, NY, David S. Buckel, Harlem Legal Services, New York City, Alan B. Block, Neighborhood Legal Services, Buffalo, NY, Lewis A. Golinker, Ithaca, NY, of counsel), for Schisler plaintiffs-appellees-cross-appellants.

Joan C. Bauer, Montpelier, VT (Alexander Scherr, Vermont Legal Aid, Inc., St. Johnsbury, VT, of counsel), for Aldrich plaintiffs-appellees-cross-appellants.

Before: KEARSE, WINTER and WALKER, Circuit Judges.

WINTER, Circuit Judge:

This consolidated appeal involves regulations issued by the Secretary of Health and Human Services ("HHS") modifying the so-called "treating physician rule" used to adjudicate Social Security disability claims. Two district courts upheld the new regulations with respect to disability adjudications within HHS but held that the treating physician rule as fashioned by this court would continue to apply in appeals from those adjudications to the federal courts. The Secretary appealed from the portions of the decisions relating to the rule to be applied in appeals. The claimants cross-appealed, challenging those portions of the judgments upholding the new regulations with respect to adjudications within HHS. We granted a stay pending this appeal.

We hold the following. The Secretary has the statutory authority to promulgate regulations concerning the weighing of evidence, including the weight to be given to opinions of treating physicians, in adjudicating claims under HHS's benefits scheme. Although the new regulations depart in various ways from this circuit's version of the rule, they are neither arbitrary, capricious, nor contrary to the statute. They are thus valid. Because they are valid, they are binding on the

courts. We therefore affirm the portions of the district courts' decisions approving the new regulations. However, we reverse those portions of the decisions indicating that the regulations are not binding on the courts. We also lift the stay.

## BACKGROUND

We first briefly review the background and procedural history of this appeal, including our earlier decisions in *Schisler v. Heckler*, 787 F.2d 76 (2d Cir.1986) (*"Schisler I"*), and *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988) (*"Schisler II"*), familiarity with which is assumed.

*Schisler I* was brought in 1980 by Robert Schisler and others similarly situated who were a New York state-wide class of Social Security disability recipients who lost their benefits on or after June 1976 even though there had been no showing of a medical improvement in their condition. *See* Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 2, 98 Stat. 1794 (amending Social Security Act and reinstating the need to prove medical improvement before terminating benefits). The class was certified in 1981.

The plaintiff class claimed that the Secretary had unlawfully deprived them of disability benefits by forcing claimants to prove their disabilities *de novo* whenever their cases were reviewed. The district court upheld the class membership, refusing the Secretary's request to narrow it. When the Secretary appealed, the plaintiff class cross-appealed, seeking, *inter alia*, an injunction ordering the Secretary to apply the so-called treating physician rule.

At the time of *Schisler I*, our caselaw had established a rule giving substantial weight to the opinions of treating physicians in disability benefit cases. *See, e.g., Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984); *Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 42 (2d Cir.1972). There were then no comprehensive administrative regulations concerning the weighing of such opinions. However, HHS chose not to acquiesce in our rule. As a result, we and the district courts within our circuit were faced

with a large volume of appeals asserting the treating physician rule as a ground for overturning denials of benefits by HHS. *Schisler I*, 787 F.2d at 82. Indeed, a district court had ordered the Secretary to apply the rule in all cases, an unprecedented intrusion into an agency's right to non-acquiesce in the rule of one circuit. *Stieberger v. Heckler*, 615 F.Supp. 1315 (S.D.N.Y.1985), *vacated sub nom. Stieberger v. Bowen*, 801 F.2d 29 (2d Cir.1986).

Congress also expressed frustration at HHS's resort to non-acquiescence because of its concomitant failure ever to seek Supreme Court review of the rules in which it refused to acquiesce. *Schisler I*, 787 F.2d at 82–83. With respect to the treating physician rule, the result of HHS's non-acquiescence was that claimants relying on the opinions of treating physicians were routinely denied benefits at the agency level. They were thus forced to take their cases one-by-one to the federal courts, which routinely remanded with instructions to apply the rule. However, HHS never sought Supreme Court review of any of these many decisions. It thus appeared that HHS was non-acquiescing in the treating physician rule not as a matter of principle—which could have been resolved by seeking review in the Supreme Court—but as a means of discouraging claimants who relied upon the rule. This creation of unnecessary legal hurdles was understandably perceived as an abuse of process.

When *Schisler I* was argued, however, counsel for the Secretary represented to us that the agency followed this court's version of the treating physician rule. *Id.* at 83. In light of that representation, we directed the Secretary to inform its adjudicators by appropriate publication of her stated policy. *Id.* at 84. This rather unique form of relief was ordered because it seemed to us that the agency's adoption of the rule as expressed by counsel was hardly evident to the agency's adjudicators. We left "to the district court the task of fashioning the precise order to accompany the remand." *Id.* at 85.

The Secretary then proposed a Social Security Ruling ("SSR") that was modified by the district court to bring it into conformity with our instructions (i.e., a verbatim restate-

ment of the rule). *See Schisler II,* 851 F.2d at 44–45 (quoting district court). The Secretary appealed, claiming that the ordered revisions exceeded the district court's authority.

In *Schisler II,* we upheld the district court's revision of the Secretary's proposed SSR because the modifications "did no more than eliminate material outside the scope of the remand and, with two exceptions,[1] restate our caselaw on the treating physician rule...." 851 F.2d at 44 (footnote added). We held that the district court might permissibly modify the Secretary's draft because, in *Schisler I,* we had "deliberately limited the relief ordered ... [, making] the remand ... not a proper occasion for the Secretary to issue a regulation ... elaborat[ing] on the treating physician rule in ways not expressly authorized by our caselaw." *Schisler II,* 851 F.2d at 45. We distinguished that situation from one in which the Secretary issued regulations after "resort[ing] to the customary administrative processes," *id.,* that would warrant "the deference traditionally shown to administrative rulings." *Id.*

In upholding the district court's authority to order the revisions, we further articulated the rule. In particular, we held that the nature of the relationship between the physician and the claimant, rather than the relationship's duration, was "determinative" of whether the physician was a "treating source" under the rule and that "[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override" a treating physician's opinion. *Id.* at 45–47. To the extent that the district court's version of the Secretary's draft agreed with the Second Circuit's rule, as further articulated in *Schisler II,* it was upheld. The full SSR as approved by us is set out in APPENDIX A. After the decision, all identified and located *Schisler II* claimants received the relief to which they were entitled.

Meanwhile, a similar class action was brought in the District of Vermont by Jonathan Aldrich, on behalf of himself and a Vermont-wide class of claimants similarly situated. *Aldrich*'s procedural history is generally similar to *Schisler.* The *Aldrich* class also sought to enjoin the Secretary from disregarding the treating physician rule. In 1984, the district court issued such an injunction. In light of *Schisler I* and then again in light of *Schisler II,* the district court vacated its earlier injunction and ordered the Secretary to reopen the class members' claims. Unlike the class in *Schisler,* the *Aldrich* class has not obtained full relief.[2]

In 1991, after notice and comment periods, the Secretary issued the regulations that are at issue in the instant appeal. They are entitled "Standards for Consultative Examinations and Existing Medical Evidence," 56 Fed.Reg. 36,932 (1991). The relevant portions of these regulations set forth comprehensive guidelines with, *inter alia,* criteria for evaluating the medical opinions of treating physicians in disability benefit claims proceedings. They differ from our version of the treating physician rule in material respects discussed in the course of this opinion. The pertinent portions of the new regulations are set out in full in APPENDIX B.

The new regulations were promptly challenged by both the *Schisler* and *Aldrich* classes. Both district courts held that the new regulations were binding in administrative proceedings but stated that the judge-made treating physician rule continued to govern disability rulings on appeal in federal courts. The district courts thus held that the treating physician rule as fashioned by us maintained its "overriding and paramount status and effect in the courts of the Second Circuit as appropriate. and until and unless the United States Court of Appeals for the

---

1. Originally, we made two revisions of the district court's version. On the appellees' petition for rehearing, we retracted the second adjustment, restoring that portion to the district court's version. *Id.* at 47.

2. The Secretary has challenged the standing of the *Schisler* and *Aldrich* classes to challenge the regulations. The *Schisler* class has received full

relief and will not be affected by the regulations except as previously unlocated claimants are discovered or class members' cases are subjected to discretionary review. The *Aldrich* class, however, is still open and seeking relief. It thus appears that the claims of individual *Aldrich* class members will be subject to the new regulations. That class therefore has standing.

Second Circuit otherwise declares." *Schisler v. Sullivan,* No. 80–CV–572E, 1992 WL 170736, at *6 (W.D.N.Y. July 8, 1992).

The Secretary appealed from the district courts' ruling that our judge-made treating physician rule continued to govern appeals. The *Schisler* and *Aldrich* claimants cross-appealed, challenging the validity of the regulations on the ground that they contradict our previous holdings in *Schisler I and II.*

## DISCUSSION

■ Section 405(a) of Title 42 authorizes the Secretary to issue regulations governing the disability program. Section 405(a) authorizes the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a) (1988); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (1993). The Secretary's authority to promulgate regulations concerning "proofs and evidence" in disability cases under Section 405(a) is " 'exceptionally broad.' " *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956–57, 76 L.Ed.2d 66 (1983) (recognizing that "Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act' ") (quoting *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981)).

■ The regulations before us fall within the scope of Section 405(a)'s grant of authority because they guide disability adjudicators in their evaluation of "the nature and extent of … proofs and evidence." Specifically, they instruct them on the evaluation of the opinions of treating physicians and the weight they should receive.

■ Judicial review of regulations promulgated pursuant to Section 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Secretary's statutory grant of authority. 42 U.S.C. § 405(g); *see Bowen v. Yuckert,* 482 U.S. 137, 145, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119 (1987); *Campbell,* 461 U.S. at 466, 103 S.Ct. at 1957.

■ The regulations at issue begin with the following general principle regarding the opinions of treating physicians.

*Treatment relationship.* Generally, we give more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors presented in the regulation] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulations specify the following factors as relevant "in determining the weight to give the [treating physician's] opinion": (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (v) other relevant but unspecified factors.

The regulations resemble but also differ from our treating physician rule in various ways. For example, like our rule, the opinions of treating physicians are accorded more weight than those of non-treating physicians. However, by granting the treating physician's opinion "controlling weight" only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the regulations accord less deference to unsupported treating physician's opinions than do our decisions. *See Schisler II,* 851 F.2d at 46–47; *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984) (starting with treating physician's opinion, which gets "more weight" whether or not supported, then comparing it with other evidence).

The regulations' list of factors to be considered in weighing the opinions of treating physicians also contains similarities to, as well as differences from, our version of the rule. For example, the regulations, like our rule, examine the treating physician's relationship with the claimant and generally defer to the treating source because of that relationship. *See* 20 C.F.R. §§ 404.-1527(d)(2), 416.927(d)(2); *Schisler II*, 851 F.2d at 46–47. Also, the regulations, like our rule, require the Secretary to provide a claimant reasons when rejecting a treating source's opinion. *See* 20 C.F.R. §§ 404.-1527(d)(2), 416.927(d)(2); *Schisler II*, 851 F.2d at 47. The regulations also differ from our rule, however, because they consider, *inter alia,* the length of the relationship between the treating source and the claimant as a relevant factor. *See* 20 C.F.R. §§ 404.-1527(d)(2)(i), 416.927(d)(2)(i). *But see Schisler II*, 851 F.2d at 46 ("The nature of the physician's relationship with the patient, rather than its duration . . ., is determinative."). They also differ from our rule because they permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record. *See* 20 C.F.R. §§ 404.-1527(f), 416.927(f). *But see Schisler II*, 851 F.2d at 47; *Hidalgo v. Bowen,* 822 F.2d 294, 297 (2d Cir.1987).

■ However, the fact that differences may exist between the new regulations and our version of the treating physician rule does not invalidate the regulations. New regulations at variance with prior judicial precedents are upheld unless "they exceeded the Secretary's authority [or] are arbitrary and capricious." *Campbell,* 461 U.S. at 466, 466–68, 103 S.Ct. at 1957, 1957–58; *Yuckert,* 482 U.S. at 144–54, 107 S.Ct. at 2292–98 (upholding Secretary's "severity" regulation as valid under Act; rejected court's prior rule); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 841–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) (upholding EPA regulation's construction of a statutory term despite conflicts between it and court's precedents); *Grocery Mfrs. of America, Inc. v. Gerace,* 755 F.2d 993, 1001 (2d Cir.), *aff'd,* 474 U.S. 801, 106 S.Ct. 36, 88 L.Ed.2d 29 *cert. denied,* 474 U.S. 820, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985). The

emerging law thus appears to give courts more leeway in establishing rules governing agency proceedings in areas where there are no comprehensive regulations than where such regulations exist.

We believe that the regulations are "reasonable" and not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782; *id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11 (regulations need not match court's rule to be reasonable). They continue to give deference to the opinions of treating physicians based on the view that opinions based on a patient-physician relationship are more reliable than opinions based, say, solely on an examination for purposes of the disability proceedings themselves. The requirement that such opinions be "well-supported" by clinical or laboratory diagnostic techniques to receive "controlling weight" departs from our rule but is not unreasonable. The Act itself states that an impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 1382c(a)(3)(C), 423(d)(3) (1988). The factors specified by the regulations to be considered in determining the weight to be given to a treating physician's opinion are also not unreasonable. The duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof can be said to bear a logical relationship to the weight to be given to such an opinion.

■ Because the regulations are valid, they are binding on the courts. Any other conclusion would result in precisely the chaos that *Schisler I* was designed to end. In *Campbell,* a claimant had been denied disability benefits based upon new regulations containing medical-vocational guidelines. We had reversed because the regulations' "guidelines did not provide the specific evidence that [the Second Circuit] previously had required." *Campbell,* 461 U.S. at 464, 103 S.Ct. at 1956. The Supreme Court disagreed, however, and "conclud[ed] that the Secretary's use of medical-vocational guidelines does not conflict with the statute, nor can we say on the record . . . that they are arbitrary and capricious." *Id.* at 468, 103

S.Ct. at 1958. The Court stated that Section 405(a) grants the Secretary authority to establish medical-vocational regulations that are binding on the courts, despite the fact that the courts had earlier established different rules in the absence of regulations directly on point. *Id.* at 466–68, 103 S.Ct. at 1956–58.

Nothing in our *Schisler* decisions is to the contrary. In *Schisler I*, we held only that the Secretary, having taken the position on appeal that she followed the Second Circuit's treating physician rule, had to inform her adjudicators, who clearly believed otherwise, of her true position. In *Schisler II*, we reviewed a proposed SSR issued pursuant to our order and remand in *Schisler I*. We held that the proposed SSR was not consistent with our treating physician rule and ordered relevant modifications. We also ordered stricken matters covering subjects unrelated to the sole purpose of the remand, namely to inform SSA adjudicators of the Secretary's adoption of our rule. In no way, however, did we go beyond the ruling in *Schisler I*, which was limited by the circumstance of the Secretary's embracing of the treating physician rule as fashioned by us. Indeed, we expressly noted that if the Secretary wanted to "elaborate on [that] rule in ways not expressly authorized by our case-law.... he should resort to the customary administrative processes." *Schisler II*, 851 F.2d at 45. In the instant matter, the Secretary has resorted to "the customary administrative processes" and has issued valid regulations. Because the Secretary has complied with the applicable rule-making procedures, we must give the new regulations "the deference traditionally shown" to the Secretary's regulations.

Affirmed in part; reversed in part; the stay is lifted.

## APPENDIX A

*Titles II and XVI: Consideration of the Opinions of Treating Sources*

PURPOSE: To clarify the Social Security Administration's (SSA) policy on developing medical evidence from treating sources and describe how SSA evaluates such evidence, including any opinion about disability, in determining whether an individual is disabled in accordance with the provisions of the Social Security Act. Particularly, this Ruling clarifies when a medical opinion by a treating source will be conclusive as to the medical issues of the nature and severity of an impairment(s) individually or collectively bearing on the claimant's ability to engage in substantial gainful activity, and indicates how the determination or decision rationale is to reflect the evaluation of evidence from a treating source.

The preferred source of medical evidence is the claimant's treating source(s). Medical evidence from a treating source is important because it will often provide a medical history of the claimant's impairment based on the ongoing treatment and physician-patient relationship with the claimant.

In addition to providing medical history, a treating source often provides an opinion about disability, i.e., diagnosis and nature and degree of impairment. Such opinions are carefully considered in evaluating disability. Although the decision as to whether an individual is disabled under the Act is made by the Secretary, medical opinions will be considered in the context of all the medical and other evidence in making that decision.

Section 223(d)(5) of the Act, as amended by the Social Security Disability Benefits Reform Act of 1984, requires the Secretary to make every reasonable effort to obtain from the individual's treating source all medical evidence, including diagnostic tests, needed to make properly a determination regarding disability, prior to evaluating medical evidence obtained from any other source on a consultative basis.

A claimant's treating source is his or her own physician, osteopath or psychologist (including an outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual. The nature of the physician's relationship with the patient, rather than its duration or its coincidence with a claim for benefits, is determinative.

Medical evidence and opinion from claimant's treating source is important because the treating source, on the basis of the ongo-

ing physician-patient relationship, is most able to give a detailed history and a reliable prognosis. Therefore, treating source evidence should always be requested and every reasonable effort should be made to obtain it. Treating sources should be requested to provide complete medical reports consisting of a medical history, clinical findings, laboratory findings, diagnosis, treatment prescribed and response to any treatment, prognosis, and a medical assessment; i.e., a statement of the individual's ability to do work-related activities. If the treating source provides an incomplete medical report, the adjudicator will request the necessary additional information from the treating source. Where SSA finds that the opinion of a treating source regarding medical issues is inconsistent with other evidence in file, including opinions of other sources, the adjudicator must resolve the inconsistency, according to the principles set forth below. If necessary to resolve the inconsistency, the adjudicator will secure additional evidence and interpretation or explanation from the treating source(s) and/or consulting source(s).

Once the adjudicator has made every reasonable effort to obtain the medical evidence and to resolve all conflicts, the adjudicator must evaluate all of the evidence in file in arriving at a determination. Initially, the adjudicator must review the record to determine what is the treating source's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment. The adjudicator should then examine the record for conflicting evidence. Upon finding conflicting evidence, the adjudicator should compare the probative value of the treating source's opinion with the probative value of the conflicting evidence.

The treating source's opinion on the subject of medical disability—i.e., diagnosis and nature and degree of impairment—is (1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources. Resolution of genuine conflicts between the opinion of the treating source, with

its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. The opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of a treating source.

Where the opinion of a treating source is being rejected or overriden, there must be a discussion documented in the file of the opinion(s) and medical findings provided by the medical sources, an explanation of how SSA evaluates the reports, a description of any unsuccessful efforts to obtain information from a source(s), the pertinent nonmedical findings, and an explanation as to why the substantial medical evidence of record contradicts the opinion(s) of a treating source(s). This discussion must be set out in a determination or decision rationale.

APPENDIX B

Evaluating medical opinions about your impairment(s) or disability.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.