25 F.3d 1037
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Barbara SHAW, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 93-2173
 United States Court of Appeals,
First Circuit.
 June 9, 1994
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Frank H. Freedman, Senior U.S. District Judge ]
 David Waldfogel, J. Patterson Rae, and Western Mass. Legal Services, Inc., on brief for appellant.
 Donald K. Stern, United States Attorney, Karen L. Goodwin, Assistant United States Attorney, and John Germanotta, Assistant Regional Counsel, Department of Health & Human Services, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Boudin, Circuit Judge, Campbell, Senior Circuit Judge, and Stahl, Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff appeals the denial of her second application for SSDI and SSI benefits for a period of alleged disability beginning November 15, 1988, due to back, neck and shoulder problems. The procedural history of plaintiff's claim, and the medical evidence in the record are thoroughly detailed in the district court's opinion. We reiterate here only to the extent necessary to orient our discussion.
 
 
 2
 Plaintiff had a history of back, neck and shoulder complaints dating back to October, 1979. She worked as a self-employed housekeeper for approximately seven years immediately prior to her initial application for disability benefits at age 47. The alleged onset of her disability was not triggered by any sudden event, but its date roughly coincides with the date upon which her physician, who had diagnosed cervical arthritis, referred her to an orthopedic surgeon, Dr. Kanner. (T.187).
 
 
 3
 Dr. Kanner diagnosed plaintiff as suffering from advanced degenerative disc disease of the cervical spine affecting four discs, with kyphotic deformity, and significant osteophytic formation at two of the discs.[1] In plaintiff's first two office visits, Dr. Kanner also observed decreased sensitivity in plaintiff's hands and paresthesia in all fingers.[2] (T.199, 200). Plaintiff's range of motion was initially restricted in all planes by 50 percent, she was unable to do any lifting or bending, and unable to use her hands at great length. (T.195-96, 199-200). Dr. Kanner recommended cervical traction and exercise therapy. (T.199- 200). Later he also recommended a soft cervical collar and lower back support. (T.226-27).
 
 
 4
 Within a few months of starting treatment, Dr. Kanner noted that plaintiff's neck condition was "greatly improved." (T.199). By February, 1990, he recorded that her upper extremity symptoms had "completely resolved," there were no radicular symptoms in her lower back, only "mild restricted motion, but otherwise no neurological deficit or spasm." (T.226). Her disc spaces were well maintained.
 
 
 5
 Nevertheless, Dr. Kanner simultaneously reported on a Welfare Department form that plaintiff was "totally disabled," and predicted that her disability would last from 10 to 12 months. (T.224). On three earlier forms, he had predicted shorter durations of 3 months, 4-6 months and 2 months respectively. (T.190, 193, 196). During the shorter time periods, he said that plaintiff would have difficulty with prolonged standing, walking, sitting, bending or heavy lifting. (T.190, 193, 196). On the last form (10-12 months) no functional limits were noted.[3]
 
 
 6
 In December, 1989, a consultative orthopedic surgeon, Dr. Silver, concurred in Dr. Kanner's diagnoses of significant degenerative disc disease, osteophyte formation, and "moderate kyphosis which can only be measured radiologically." (T.202). He observed, however, that plaintiff walked with a normal gait, maintained normal posture, and got on and off the examining table without hesitation. (T.201). The range of motion for her lumbosacral spine was sufficient to enable her to reach within an inch of the floor with her knees straight. As to the cervical spine, she was able to touch her chin to her chest and rotate forty five degrees to the right and left. There was "no tenderness throughout the spinous process of the cervical spine," and "no pain on palpation to the shoulder musculature," no spasm or neurological deficit, and no indication of weakness of grasp. (T.202-03). Dr. Silver opined that plaintiff's kyphosis was the main cause of her difficulties. (T.203).
 
 
 7
 There were also three residual functional capacity assessments ("RFCs") by State agency doctors based on plaintiff's medical records. All three found that plaintiff had a residual functional capacity to frequently lift or carry up to 25 pounds, and to sit, stand and walk for up to six hours a day with normal breaks. (T.79-80, 139-46, 165-72). The facts detailed by two of the agency doctors in support of their assessments include the medical signs recited by the two examining orthopedists that seem inconsistent with a high degree of pain, i.e., plaintiff's normal gait, the absence of muscle spasm, radicular or neurological deficits, and a mild limitation on range of motion.
 
 
 8
 After a hearing at which plaintiff testified at length about her pain, the ALJ found plaintiff "not disabled" at step four of the regulatory sequential analysis, in that she was able to return to her past relevant work as a house cleaner. See 20 C.F.R. Sec. 404.1520.
 
 
 9
 There seems little question that there is substantial evidence in the record to support the ALJ's decision. Plaintiff's claim to a disability of statutory severity was based on impairments which, by definition, include a degree of pain. The question before the ALJ at step four was whether plaintiff's pain was so intense, persistent or functionally limiting as to prevent her from returning to her past relevant work. 20 C.F.R. Sec. 404.1529(b). Both examining orthopedists reported medical signs and symptoms inconsistent with the unremitting pain which plaintiff alleged. In conformance with the regulations and caselaw, the ALJ considered detailed testimony from the plaintiff and her son about her symptoms, her intolerance of pain medication, her home traction and exercise regimen, her other daily activities, and the extent to which her pain allegedly impeded her functioning. Avery v. Secretary of HHS, 797 F.2d 19, 23 (1st Cir. 1986); 20 C.F.R. Secs. 404.1529(c), 416.929(c) (1991). Although the ALJ's findings are more abbreviated than we might prefer, it is clear that he found plaintiff's testimony about the limiting severity of her pain not credible, inconsistent with the medical signs reported, and inconsistent with the daily activities and work history which she described. In these circumstances, "the credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference ... " Frustaglia v. Secretary of HHS, 829 F.2d 192, 195 (1st Cir. 1987).
 
 
 10
 Plaintiff bore the burden of proving that her impairments prevented her from performing her former type of work. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); see also Dudley v. Secretary of HHS, 816 F.2d 792, 795 (1st Cir. 1987) (plaintiff's burden includes proving the particular demands of her past work that she cannot perform). She described her work as requiring frequent bending and reaching, and the lifting of 10 to 20 pounds,[4] capacities which the nontreating doctors concluded that she retained. Although plaintiff produced three reports from Dr. Kanner to the Welfare Department stating that her functional capacities were then more limited, each report predicted a very short disability period, together totalling less than the statutory minimum for disability. See 42 U.S.C. Sec. 423(d)(1)(A) (a qualifying impairment is one which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). Dr. Kanner's fourth report carried the prediction of "total disability" into the statutory period, but did not specify any functional limitation. Viewed as a mixed legal-medical conclusion, it was not binding on the ALJ. 20 C.F.R. Sec. 404.1527(d)(2) (1991).
 
 
 11
 Plaintiff argues, however, that the ALJ and the district court erred in applying the recently promulgated regulation relating to the weight to be assigned to treating doctor reports, 20 C.F.R. S 404.1527 (1991).[5] She contends that the regulation required that the ALJ assign (1) "controlling weight" to Dr. Kanner's evaluation, and/or (2) "substantially greater weight" to his opinion than to those of the non-treating physicians. A part of the regulation provides:
 
 
 12
 Generally we give more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give ... controlling weight, we will apply [other factors] in determining [its] weight ... We will always give good reasons in our ... decision for the weight we give your treating source's opinion.
 
 
 13
 20 C.F.R. Sec. 404.1527(d)(2). While the district court seems to have overlooked this regulation, we do not think a remand is required.
 
 
 14
 Controlling weight may be accorded to a treating doctor's opinion as to the "nature" and "severity" of a claimant's impairments where, among other qualifications, the opinion is "not inconsistent" with substantial evidence in the case. By this measure, Dr. Kanner's diagnosis, confirmed by the consulting orthopedist and accepted by the three non- examining doctors, qualified for "controlling weight." We find no fault with the decisions below on this score. Both the ALJ and the district court accepted as a given Dr. Kanner's diagnosis of plaintiff's condition.
 
 
 15
 On the other hand, Dr. Kanner's opinion as to the "severity" of claimant's impairments is not easily characterized, making inexact any attempt at bottom line contrasts with the other doctors' opinions. While Dr. Kanner three times reported to the Welfare Department that appellant was unable to engage in prolonged bending, sitting or standing, on each occasion he indicated that the expected duration of appellant's disability would be quite short, suggesting only an episodic impairment. During the same period, moreover, his office notes indicate that appellant was showing marked improvement, some of her symptoms were "completely resolved," and she had achieved significant relief through a regimen of home traction and exercise therapy. His fourth report, extending the conclusion "totally disabled" for another 10 to 12 months, is not explained.
 
 
 16
 Appellant's line of argument presumably would have us disregard the time limits and internal inconsistencies in Dr. Kanner's reports and interpret his statement that appellant was "totally disabled" as a shorthand expression of his medical opinion that appellant's impairments were of such "severity" as to cause lasting functional incapacity.[6] Appellant points to the doctor's recommended treatment as further proof that his actual opinion supports her interpretation. Even so, however, Dr. Kanner's opinion would not automatically qualify for "controlling weight" because the consulting physician and the three non-examining doctors reached a divergent result. When a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of "controlling weight" does not apply. All things being equal, however, a treating doctor's report may be entitled to "greater" weight than an inconsistent non-treating source.[7]
 
 
 17
 We do not agree, however, that the ALJ was required to construe Dr. Kanner's time limited welfare form statements in the manner most advantageous to appellant. The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ, who may, as here, use a consultative examination to help resolve uncertainties. 20 C.F.R. Sec. 404.1527(c)(3)(4). The ALJ must evaluate all medical opinions from all sources in light of a non-exclusive list of possibly relevant factors. 20 C.F.R. Secs. 404.1527(f), 416.927(f). While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record. See Standards for Consultative Examinations and Existing Medical Evidence; Final Rule, 56 Fed. Reg. 36,931, 36,936 (1991); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (observing that the new regulation differs in this regard from the Second Circuit's former rule, and affirming the Secretary's authority to promulgate the new regulation).
 
 
 18
 Appellant would have us reweigh the evidence in light of the multitude of factors identified in the regulations. Our standard of review on appeal, however, is whether the Secretary's findings are supported by "substantial evidence." Although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Secretary of HHS, 647 F.2d 218, 222 (1st Cir. 1981)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Resolutions of conflicts in the evidence and credibility issues are for the Secretary, not the courts. Ortiz, 955 F.2d at 769; Evangelista v. Secretary of HHS, 826 F.2d 136, 141 (1st Cir. 1987). Where the facts permit diverse inferences, we will affirm the Secretary even if we might have reached a different result. Rodriguez Pagan v. Secretary of HHS, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988); Lizotte v. Secretary of HHS, 654 F.2d 127, 128 (1st Cir. 1981).
 
 
 19
 As we have said, on the one hand Dr. Kanner's reports might be fairly viewed as consistent with the other medical evidence in reflecting only episodic functional limitations. On the other hand, they might be viewed as internally inconsistent or inconsistent with the record as a whole, factors which weigh against excessive reliance on the treating doctor's opinion. 20 C.F.R. Sec. 404.1527(d)(ii)(3)(4). The ALJ was required to consider these ambiguities in light of the other medical evidence, plaintiff's testimony about her pain, and his own assessment of plaintiff's credibility. 20 C.F.R. Sec. 404.1529(c)(1) (in evaluating intensity and persistence of pain, medical opinions are to be considered in light of factors stated in Sec. 404.1527). We hold only that the ALJ's reconciliation of the evidence as revealing an impairment "severe" enough to pass muster at step two of the process, but not so severe as to prevent plaintiff from returning to her past work, is supported by substantial evidence in the record.
 
 
 20
 We also find appellant's remaining arguments wanting. We agree with the district court that while the ALJ did not expressly cite the agency doctors' reports (only the agency findings) he implicitly took them into account. While we would prefer more explanatory detail, and the new regulation contemplates greater detail, we see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record.
 
 
 21
 We also reject appellant's argument that the ALJ erred by failing to obtain more information from Dr. Kanner. Where the evidence is inconsistent or insufficient to enable the ALJ make a decision, the ALJ may recontact medical sources, request that the claimant undergo a consultative examination or produce additional information. 20 C.F.R. Secs. 1519p, 1527(c)(3). There was a consultative examination here, and the ALJ apparently did not see the need for more evidence from Dr. Kanner. Appellant, too, had an obligation. She was required to produce all information supportive of her claim. 20 C.F.R. Sec. 404.1512(a). She was well represented by a paralegal under the supervision of an attorney, afforded ample opportunity to present her case, and did not indicate any desire to offer further evidence. (T.72). After the ALJ's decision, she was afforded a further opportunity to present additional or clarifying evidence to the appeals council, but chose not to. (T.73, 232). Under these circumstances, we see no prejudice in the ALJ's failure to recontact the doctors.
 
 
 22
 Accordingly, the judgment below is affirmed.
 
 
 
 [1]
 Kyphosis is defined as "abnormally increased convexity in the curvature of the thoracic spine as viewed from the side; hunchback." Dorland's Illustrated Medical Dictionary 705 (26th ed. 1985). Osteophyte is defined as "a bony excrescence or osseous outgrowth." Id. at 943
 
 
 [2]
 Paresthesia is defined as an "abnormal sensation, such as burning, prickling, formication, etc." The Sloane-Dorland Annotated Medical-Legal Dictionary 533 (1987)
 
 
 [3]
 In answer to a written question from appellant's attorney in May, 1990, Dr. Kanner checked "no" when asked "has [appellant] achieved pain relief to such a degree that you would no longer judge her to have difficulty with prolonged [activities] as you had in your [earlier] reports to the Welfare Department?" (T.205) He did not further explain his answer, however, despite a request for an explanation (T. 205)
 
 
 [4]
 Plaintiff gave several somewhat contradictory descriptions of the demands of her past work (T.84, 98, 131). The ALJ was entitled to rely on the description he found most credible. See Santiago v. Secretary of HHS, 944 F.2d 1, 5 (1st Cir. 1991) (ALJ is entitled to rely on claimant's own description)
 
 
 [5]
 The Secretary has not objected to the applicability of this regulation, which became final shortly after the ALJ's decision was issued
 
 
 [6]
 The decision whether a claimant is "disabled" within the meaning of the statute and regulations is reserved solely for the Secretary. 20 C.F.R. Sec. 404.1526(e). To the extent that Dr. Kanner's opinion is urged as reflecting an answer to the statutory question, it was not binding on the ALJ. 20 C.F.R. Sec. 404.1526(e)(1); see supra text at 7
 
 
 [7]
 The Secretary's comments accompanying promulgation of the final regulation observe that if a treating and non-treating source conflict, and the two opinions are equally well- supported, the Secretary will give "greater weight" to the treating source opinion, at least where the treating doctor is shown to have superior familiarity with the patient and a variety of other qualifications are met. 20 Fed. Reg. 36,951