Robert E. BAYBROOK

v.

Shirley S. CHATER [1], Commissioner
of Social Security.

No. 94 CV 282.

United States District Court,
D. Vermont.

Aug. 14, 1996.

---

1. The Social Security Independence and Program Improvements Act transferred the function of the Secretary of Health of Human Services in Social Security cases to the Commissioner of Social Security effective March 31, 1995. *See* 42 U.S.C. §§ 901, 902. Accordingly, Shirley S. Chater, Commissioner of Social Security Administration, was substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. The Court refers to the Commissioner in this opinion as she was the appropriate party at the time of the Magistrate's opinion which is the subject of this appeal.

Beth A. Danon, Mickenberg, Dunn, Sirotkin & Dorsch, Burlington, VT, for plaintiff.

Christopher B. Baril, Asst. U.S. Atty., Rutland, VT, for defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff-appellant Robert Baybrook ("Baybrook") brought an action pursuant to 42 U.S.C. 405(g), seeking review of the decision of the Commissioner of Social Services ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("the Act"). United States Magistrate Judge Jerome Niedermeier affirmed the Commissioner's decision. On November 20, 1995, Baybrook appealed the Magistrate's order pursuant to 28 U.S.C. § 636(c)(4). On appeal, Baybrook argues that the Administrative Law Judge ("ALJ") did not properly evaluate the evidence, misapplied the treating physician rule, and disregarded pertinent evidence of considerable weight. For the reasons set forth below, the Court reverses the Secretary's decisions denying Baybrook benefits because the ALJ applied the incorrect legal standard in assessing the treating physician rule. Accordingly the action is remanded for further proceedings consistent with this opinion and order.

### *BACKGROUND*

Baybrook was insured for Social Security Disability ("SSD") benefits under Title II of the Social Security Act until March 31, 1987. He was 43 years old when his insured status expired. Baybrook applied for disability benefits with the Social Security Administration ("SSA") District Office in Burlington, Vermont, on September 1, 1992, for a period of disability beginning on October 10, 1981, claiming inability to work due to back pain and nerve problems. Baybrook's application was denied on the ground that he was not

disabled prior to March 31, 1987, the date his insured status expired.[2] Baybrook requested reconsideration on February 26, 1993, and again his application was denied. On August 10, 1993, Baybrook requested a hearing before an ALJ to review his September 1, 1992, application for Title II benefits.

On December 7, 1993, the ALJ, Robert Klingebiel, held a *de novo* hearing at which Baybrook, his attorney, his wife, and a vocational expert appeared. Baybrook testified that he was 49 years old, had graduated from high school, had no further education or vocational training, and had an employment background which included mostly security guard work.

Baybrook's first back injury, according to his testimony, occurred after he fell 35 to 40 feet from a gondola tower while working at a ski resort in the late 1960's. That fall resulted in severe head injuries and ligament and muscle damage. Baybrook testified that he last worked as a security guard for a ferry company in Burlington, Vermont, and was forced to leave this position in 1981 after falling down a ladder and reinjuring his back. As a result of this injury, he sought medical attention from Dr. Robert Zelazo and Dr. Patrick L. O'Connor and collected Worker's Compensation.

Baybrook further testified that following the 1981 ladder incident, he could not return to his past work as a security guard. Eventually, in an attempt to get back to work, he entered a vocational rehabilitation program. The program set him up in his own lawn care business. The business eventually failed because he was only able to ride the tractor for short periods, was unable to rake or trim, and could only work two hours a day, four days a week.

Baybrook also testified that he was elected Berkshire town constable in 1987 and served through 1991. This position only required an hour a week of his time. Baybrook told the ALJ that when he was not doing constable work or mowing lawns, he sat and lay down at his house.

The ALJ reviewed Baybrook's medical records, including the records of his treating physician Dr. Zelazo. Dr. Zelazo's reports indicate that Baybrook suffered from back pain in June 1984 and January 1986. In the January 1986 report, Dr. Zelazo recommended that Baybrook be re-fitted for a back brace. Dr. Zelazo did not prescribe pain medication in June 1984 or in January 1986 and did not report complaints of back pain after January 1986.

The ALJ considered a November 29, 1993, letter from Dr. Zelazo stating that Baybrook's back condition was disabling prior to March 31, 1987. Based on his records, Dr. Zelazo surmised that Baybrook had back problems since the mid 1960's. Moreover, he opined that Baybrook's back condition kept him from sustaining full-time employment beginning in October 1981.

The medical records before the ALJ also contained reports prepared by Chronic Pain Rehabilitation Services, University Health Center, Burlington, Vermont. The Rehabilitation Service's records indicated that Dr. Raymond Milhous directed an evaluation of Baybrook's condition by a psychologist, a physical therapist, and an occupational therapist. Dr. Milhous' physical examination report noted that Baybrook had discomfort when attempting exercises, moved cautiously, and had tenderness over his entire lower back. The psychological report suggested that Baybrook was a reasonably passive-dependent individual who would therefore have difficulty complying with his medical treatment. The occupational therapy report indicated that Baybrook had a low activity level and poor body mechanics. Baybrook discontinued the pain rehabilitation program after cancelling or failing to keep numerous appointments.

The ALJ considered three additional reports. A November 15, 1983, letter from Dr. Stuart Graves stated that he had been treating Baybrook for a few months for major depression with melancholia. Dr. Graves prescribed anti-depressant medication and noted some improvement. Dr. Graves also

---

2. Baybrook also applied for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.,* on September 1, 1992. The Secretary granted Baybrook's application and he now receives SSI.

indicated that Baybrook's back pain caused a loss of function which, in turn, fostered depression.

A July 5, 1984, report prepared by Dr. Dorothy Ford of University Orthopaedics stated that Baybrook had chronic back pain without radiation. The report indicated that Baybrook was unable to seek further psychiatric care for depression and participate in the pain rehabilitation program because he could not afford to travel to Burlington. Baybrook told Dr. Ford that the pain was constant and that he felt best when lying down and worst while driving. Dr. Ford's objective tests revealed limitation in forward flexion, but normal deep tendon reflexes, normal sensation to pin prick, and normal great toe extensor strength. Dr. Ford found that straight leg raising caused back pain at 60 degree bilaterally. Moreover, Dr. Ford reviewed X-rays from 1983 and considered them essentially normal. She told Baybrook that he was "undoubtably too young to obtain Social Security Disability on the basis of his complaint of pain alone." She also recommended that Baybrook work with Farm Family Rehabilitation in order to obtain some kind of work not involving manual labor.

A recent report prepared by Ms. Gail Engels, a social worker, indicated that she had examined Baybrook and concluded that he had a nonspecific personality disorder with dependant and self-defeating features.

Finally, the ALJ considered the testimony of vocational expert Michael Milne. Milne stated that a person who could not lift and carry 20 pounds but could lift and carry ten pounds, who had limited ability to stoop, kneel, crouch, crawl, and climb, and who needed to change his position periodically, could nevertheless work in some security guard positions. Milne indicated that there were 13,498 positions in New England that such a person could perform. Furthermore, Milne said there were 12,613 light duty cashier positions, 1,800 sedentary security monitor positions, 1,300 sedentary lot cashier po-sitions, and 2,815 sedentary order taker clerk positions that such a person could perform.

On February 15, 1994, the ALJ determined that, as of March 21, 1987, the date of Baybrook's last insured status, Baybrook was not disabled for the purpose of receiving benefits under Title II of the Social Security Act. The basis for the ALJ's decision was that: Baybrook had not engaged in substantial gainful activity since October 10, 1981; he did not have an impairment or combination of impairments listed in or medically equivalent to any listed in Appendix I of the regulations; his testimony and allegations regarding subjective complaints, including pain, were not credible; he had the residual functional capacity for light and sedentary work except for performing repetitive bending and similar postural exertions; he could return to his past relevant work as a security guard; and, even if he could not return to his past relevant work as a security guard, he could perform sedentary work, listed by the vocational expert, with the same restrictions.

On April 14, 1994, Baybrook requested review by the Appeals Council.[3] Baybrook submitted additional evidence, clinical records from Dr. Patrick O'Conner, to the Appeals Council on July 28, 1994. On July 29, 1994, the Appeals Council denied Baybrook's request for review stating that the ALJ fully considered and evaluated the evidence and reached the appropriate conclusion on the issues. Thus, the ALJ's decision became the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981; 42 U.S.C. § 405(g).

On September 30, 1994, Baybrook filed a civil complaint with this Court seeking review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g). The parties consented to have the case heard and decided by the Magistrate with an appeal to this Court, pursuant to 28 U.S.C. 636(c) and Fed. R.Civ.P. 73(d). Baybrook then moved for summary judgment and the Commissioner cross-moved for summary judgment. On September 19, 1995, the Magistrate denied

**3.** A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the Commission's process of adjudicating claims for SSD and SSI benefits. Prior to the Appeals Council review, the administrative steps are the initial determination, reconsideration, and a hearing before an ALJ. *See* 20 C.F.R. §§ 404.900, 416.1400.

Baybrook's motion and granted the Commissioner's motion. *Baybrook v. Chater*, No. 94–cv–282, (D.Vt. Sept. 19, 1995) (Niedermeier, J.). Judgment was entered on September 20, 1995. Relying on *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993) (*Schisler III*), the Magistrate held that the ALJ applied the new treating physician rule, 20 C.F.R. § 404.1527(d)(2), properly, and that the Commissioner's decision was supported by substantial evidence. This appeal followed.

## DISCUSSION

The crux of this appeal is the application of the "treating physician rule" to Baybrook's case. Additionally, Baybrook claims that the ALJ improperly discounted the evidence given by his treating physician. Baybrook also urges that the ALJ gave inadequate weight to his claims of work limitations and subjective pain.

### 1. *Standard of Review*

 In reviewing a magistrate's decision pursuant to 28 U.S.C. § 636(c)(4), a district court employs the same standard of review as utilized by a court of appeals in review of a district court's decision. *Florists' Mut. Ins. Co. v. Tatterson*, 802 F.Supp. 1426, 1431 (E.D.Va.1992); *see* 28 U.S.C. § 636(c)(4). The scope of review of a disability determination under 42 U.S.C. § 423(a)(1) involves two levels of inquiry. First, the court must decide whether the correct legal principles were applied in making the determination. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). Where evidence has not been properly evaluated because of an erroneous view of the law, the determination of the Commissioner will not be upheld. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). If the ALJ did not apply the correct legal standards, the court will remand the case for agency reconsideration using the correct legal principles. *Johnson*, 817 F.2d at 986. If however, "the application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

Second, if correct legal principles were applied, the court must decide if the ALJ's decision is supported by "substantial evidence." *Id.* at 985; 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla. It " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

### 2. *Standard for Entitlement to Benefits*

The standard for entitlement to disability benefits is set out at 42 U.S.C. § 423 (1994).[4] To be eligible for an entitlement, the claimant must meet the insured-status criteria of 42 U.S.C. § 423(c) and establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); *White v. Secretary of Health and Human Services*, 910 F.2d 64, 65 (2d Cir.1990). The physical or mental impairment must be of such severity that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A); *White*, 910 F.2d at 65.

When evaluating disability claims, the Commissioner uses the five-step process set forth at 20 C.F.R. § 404.1520. First, the Commissioner determines whether the claimant is working and whether the work is substantial gainful activity. If so, the Commissioner will find that the claimant is not disabled. If not, the Commissioner determines whether the claimant has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment(s), the Commissioner next determines whether the impairment(s) is listed in Appendix 1 of the

---

**4.** The definition of "disabled" is the same for purposes of receiving SSD and SSI benefits.

*Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).

regulations or is equal to a listed impairment(s). If the impairment(s) is listed, the Commissioner will find the claimant disabled without considering age, education, and work experience. However, if the impairment(s) is not listed, the Commissioner must assess, under the fourth step, whether the claimant possesses the residual functional capacity to perform work he had done in the past. If the Commissioner determines that the claimant can still perform work he had done in the past, the Commissioner will find that the claimant is not disabled. If the claimant cannot perform work he had done in the past, the Commissioner then determines whether the claimant can perform other work available in the national economy. If the claimant cannot perform other work, the Commissioner will find him disabled. 20 C.F.R. § 404.1520; *see Bosley v. Shalala,* 879 F.Supp. 296, 301 (W.D.N.Y.1995).

The claimant bears the initial burden of proving that his impairment prevents him from returning to his past work. Once satisfied, the burden then shifts to the Commissioner to prove that the claimant can perform alternative substantial gainful employment that exists in the national economy. *White,* 910 F.2d at 65; *Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983).

3. *The "Treating Physician Rule"*

Baybrook argues that the ALJ misapplied the so-called "treating physician rule" to his claim. Prior to 1991, it was an established rule in this circuit that the expert opinion of a claimant's treating physician on the subject of medical disability was binding on Health and Human Services unless contradicted by substantial evidence, and if contradicted, that opinion nonetheless was entitled to some extra weight. *See e.g. Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988) (*"Schisler II"*) (setting forth approved Social Security Ruling on opinions of treating sources as Appendix A).

In 1991, the Secretary issued new regulations modifying the treating physician rule. *See* 20 C.F.R. § 404.1527. Those regulations were challenged in *Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993) (*"Schisler III"*). The

court found that "[a]lthough the new regulations depart in various ways from this circuit's version of the rule, they are neither arbitrary, capricious, nor contrary to the statute. They are thus valid. Because they are valid they are binding on the courts." *Id.* at 564.

The new regulation states in relevant part:

> If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight.... [The Commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] your treating source's opinion.

20 C.F.R. § 404.1527(d)(2); *Schisler III,* 3 F.3d at 567.

Under the new rule, the opinion of a treating physician is controlling only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is not given controlling weight, the weight to be given the opinion is determined by applying the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole, § 404.1527(d)(4); (5) whether the opinion is of a specialist; and, (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)–(6).

In the instant case, the ALJ applied the pre–1991 Second Circuit rule in considering the weight that was to be given to the opinion of the treating physician. He specifically referred to the *Schisler v. Bowen* (*"Schisler II"*) opinion as authority for application of the treating physician rule. The new regulations adopted by the Commissioner and approved by the Second Circuit in *Schisler v.*

*Sullivan* were never addressed. Although the ALJ did determine that the treating physician's opinion was non-controlling, he failed to mention what weight he gave the opinion other than "extra" weight required by the old rule. Further, he failed to apply the six factors used to judge what weight was to give to Dr. Zelazo's opinion.

The Commissioner concedes that the ALJ applied the incorrect standard for applying the treating physician rule. However, the Commissioner argues that the six factors under 20 C.F.R. § 404.1527(d) for assessing the weight given to the treating physician's opinion were considered in substance. In the alternative, the Commissioner argues that the new regulation "only requires that if the ALJ rejects the treating physician's opinion, that he 'give good reasons' for the decision," and that good reasons were given in the ALJ opinion. Paper # 22 at 15 (relying on 20 C.F.R. § 404.1527(d)).

■ The Court finds, however, that the six factors were not considered in substance. The ALJ opinion failed to address several of the factors. It failed to describe the length and frequency of the services provided by Dr. Zelazo, nor did it define the nature of the claimant's relationship with his physician. Aside from describing Dr. Zelazo as an internist, the opinion omitted mention of any area of specialization or lack thereof. More importantly, the ALJ failed to state what weight he in fact accorded to the treating physician's opinion.

The Commissioner's argument that the ALJ need only give good reasons for rejecting the treating physician's opinion fails to take into account the agency's own rules for evaluating the opinion. The new regulations require consideration of the 20 C.F.R. § 404.1527(d) factors in order to determine the proper weight to give the opinion. *Sharieff v. Shalala*, 877 F.Supp. 104, 107 (E.D.N.Y.1995). The regulations further provide that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] your treating source's opinion." 20 C.F.R. § 404.1527(d)(2). In the instant case, the ALJ stated merely:

[Plaintiff's] treating physician, Dr. Robert M. Zelazo, reports that [plaintiff's back pain] is disabling. I do not entirely credit his opinion for several reasons and conclude that even after affording it extra weight in the face of contradictory medical and testimonial evidence it is not binding pursuant to *Schisler vs. Bowen.*

(Tr. 21). The ALJ fails to specify how much weight is afforded the opinion other than to say "extra" and that it is not binding.

■ Because the ALJ failed to apply the factors properly, it is impossible to assess whether the treating physician's opinion was properly rejected. In light of this failure, and because the record contains evidence supporting findings of either disability or no disability, the case must be remanded for application of the correct legal standard for assessing the weight to accord the treating physician's opinion. *Johnson*, 817 F.2d at 986.

In light of the Court's ruling concerning the treating physician's rule, consideration of the other issues raised by this appeal are moot.

## CONCLUSION

In view of the foregoing, the judgment of the Magistrate is REVERSED, and the case is REMANDED to the Magistrate with directions to remand to the Commissioner for further proceedings consistent with this opinion.