Denise E. THORINGTON, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 93–CV–486A.

United States District Court,
W.D. New York.

Oct. 28, 1994.

Kenneth R. Hiller, Jeffrey Freedman, Buffalo, NY, for plaintiff.

Patrick H. Nemoyer, U.S. Atty. (Donald P. Simet, Asst. U.S. Atty. of counsel), Buffalo, NY, for the Government.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on September 14, 1993. On January 31, 1994, the Secretary filed a motion for judgment on the pleadings with respect to plaintiff's disability insurance benefits and for remand with respect to plaintiff's SSI benefits.

On February 18, 1994, Magistrate Judge Heckman filed a Report and Recommendation recommending that the Secretary's motion for judgment on the pleadings be denied, that the Secretary's motion for remand be granted, and the case remanded to the Secretary for further proceedings with respect to both the disability insurance and SSI benefits applications.

The government filed objections to the Report and Recommendation on March 10, 1994. Plaintiff filed a response on March 25, 1994, and the government filed a reply on March 30, 1994. The Court heard argument on April 26, 1994.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and of the record and the submissions and after hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and

Recommendation, the Secretary's motion for judgment on the pleadings is denied, the Secretary's motion for remand is granted, and the case is remanded to the Secretary for further proceedings with respect to both the disability insurance and SSI benefits applications.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

. This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff initiated this action to seek review of the final decision of the Secretary of Health and Human Services (the "Secretary") denying her disability insurance and supplemental security income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433 (Title II) and §§ 1381–1383d (Title XVI). The Secretary has filed a motion for judgment on the pleadings with respect to the disability insurance benefits determination, and for remand with respect to the SSI benefits determination. For the reasons that follow, it is recommended that the Secretary's motion for judgment on the pleadings be denied, that the Secretary's motion for remand be granted, and the case remanded to the Secretary for further proceedings with respect to both the disability insurance and SSI benefits applications.

1. References preceded by "T" are to page numbers of the transcript of the administrative record, filed by the Secretary as part of her answer to the complaint.

2. Because disability insurance benefits under Title II are paid as insurance against lost income caused by disability from work, the claimant must demonstrate a recent connection to the workforce in order to maintain "insured status." See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); see also 20 C.F.R. §§ 404.101, 404.130; Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir.1989). For an applicant who becomes disabled after age 31, insured status is generally dependent on a ratio of the number of accumulated quarters in which the claimant earned wages to the number of total quarters during the ten-year period ending with the last quarter of coverage. See 20 C.F.R.

## BACKGROUND

Plaintiff was born on January 1, 1951 (T. 47).[1] She has a twelfth grade education. She was formerly employed as a nurse's aid, a convenience store clerk, and a factory worker. She was last employed in 1988 as a part-time housekeeper at a hotel and restaurant (T. 97).

Plaintiff applied for SSI benefits on November 12, 1991 (T. 77–80), and for disability insurance benefits on November 18, 1991 (T. 47–49), alleging disability as of December 28, 1988 due to degenerative disc disease (T. 93). It is not disputed that plaintiff met the disability insured status requirements of the Act on the alleged onset date, and continued to meet those requirements through June 30, 1989, but not thereafter (T. 86).[2]

The medical evidence in the record shows that plaintiff was examined by Dr. John R. Scott, an internist, on January 25, 1989 (T. 150). Dr. Scott noted that plaintiff had suffered a "sudden onset one month ago of pain in the right lumbar region" while doing house cleaning. The back pain was accompanied by numbness and tingling radiating down her leg. Following chiropractic treatment, the pain had diminished by fifty per cent, and the numbness had disappeared. Dr. Scott's impression was "L4 right lumbar disc disease, improving, one month duration." He prescribed two weeks of complete bed rest along with anti-inflammatory and pain medication (id.).

On January 27, 1989, Dr. Scott referred plaintiff to Dr. David M. McGee, a neurosur-

§ 404.130(b). An applicant who applies for disability insurance benefits on a date subsequent to the expiration of her insured status may nonetheless have been "insured for disability" at that time if she qualified for a "period of disability" under 42 U.S.C. § 416(i)(2)(C). See 20 C.F.R. §§ 404.131(a), 404.320(a); see also Sprow v. Bowen, 865 F.2d 207, 208 (2d Cir.1989). SSI benefits are paid "to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level ...," 20 C.F.R. § 416.110, and are not dependent on an applicant's insured status. 42 U.S.C. § 1382c(a)(3)(A); see also White v. Shalala, 7 F.3d 296, 298 (2d Cir.1993).

geon, for further evaluation after she reported two successive days of terrible pain (T. 149). Upon examination on February 2, 1989, Dr. McGee's impression was herniated intervertebral disc, lumbar, with secondary right sciatica (T. 127). He noted her lack of improvement with prescribed course of bed rest and medication, a sudden increase in the level of disabling pain, and her inability to continue conservative care at home. He recommended immediate hospital admission for pain control (id.).

Plaintiff was admitted to Arnot–Ogden Hospital in Elmira, New York on February 2, 1989, for "further evaluation of severe right sciatica" (T. 121). She underwent "water soluble myelogram which failed to show major nerve root cut-off ..." (id., T. 125). She also underwent a bone scan (T. 124), a CT scan and x-rays (T. 125), none of which revealed any evidence of disc herniation or other significant abnormalities. During her stay at the hospital she was treated conservatively with medication and physical therapy. She showed "gradual improvement in her radiating leg pain over many days and slow decrease in back pain complaints" (id.). Upon discharge on February 13, 1989, Dr. McGee advised plaintiff "to slowly increase light activities, to remain off work duty, slow increase in ambulation" (id.).

Plaintiff attended seven physical therapy sessions at Jones Memorial Hospital in Wellsville during April and May, 1989. Physical therapist Lee Chaffee noted plaintiff's complaints of lower back pain, especially when sitting or in prolonged postures. None of the therapy techniques used resulted in "any immediate alleviation" (T. 128).

On June 16, 1989, plaintiff was examined again by Dr. Scott. He noted that the myelogram taken at Arnot–Ogden Hospital "did not show any herniated disc but there is some weakening of discs" (T. 149). Dr. Scott further noted that plaintiff had been unable to increase her activity because of continuing pain. "If she walks more than a block she has a lot of pain and she is very tired the next day. It hurts to bend, it hurts to sit in chairs" (id.). According to Dr. Scott, "[t]here is no way that she can continue her previous job duties which included lifting 35 lbs most of the day. She remains disabled" (id.).

She saw Dr. Scott again on June 30, 1989. His diagnosis was degenerative disc disease, with no improvement noted (T. 148). On July 28, 1989, Dr. Scott noted that medication had not helped alleviate her pain. Dr. Scott "discussed with her and her husband the nature of chronic disc disease" (id.). Dr. Scott was of the opinion that plaintiff would not "be able to do bending or lifting or that type of work in the future. This will be a chronic condition" (id.).

On September 25, 1989, Dr. Scott reported that plaintiff had undergone four nerve blocks, and that was "all she can take" (id.). She had tingling in her leg, urinary problems and nausea following the nerve blocks. Her back was "about the same. As long as she doesn't do a lot of lifting she is fine but there is a definite limit to what she can do. She almost has trouble arising in the morning. Driving a long distance in the car is very difficult" (id.).

On November 29, 1989, Dr. Scott reported that plaintiff's back pain involving the right sciatic nerve had stabilized, and that she had resumed "light work" activity, but that "now for two weeks it has bothered the left leg the same as it did the right leg" (T. 147). He diagnosed lower lumbar disc disease with left sciatica, and prescribed bed rest with medication, "but when discomfort is improved ... she may be up and about doing very light activity" (id.).

On December 18, 1989, Dr. Scott reported that plaintiff's condition was virtually unchanged. He noted that she has had several epidural blocks, chiropractic treatment, physical therapy and medication, all with no improvement. He suggested a TENS unit on a trial basis, and mentioned the possibility of referral to the back rehabilitation clinic in Binghamton (T. 147).

On March 7, 1990, Dr. Scott reported that plaintiff's back pain was "about the same as it has been right along. No better, no worse." He noted that she was looking for a job that did not require a lot of bending or lifting. He also noted recent complaints of migraine headaches (T. 146).

Plaintiff was referred back to Dr. McGee on May 4, 1990 (T. 146). In a letter dated May 15, 1990, Dr. McGee reported that plaintiff underwent an MRI which indicated "multi-level degenerative disc changes without major stenosis or disc herniation" (T. 178). He recommended that she try a TENS unit for pain control, and mentioned the possibility of referral to the Pain Clinic in Rochester if she continues to experience pain without progress (*id.*).

Dr. Scott's May 25, 1990 report noted that upon further evaluation by Dr. McGee, plaintiff showed "increasing deterioration of the lumbar discs in her back" (T. 145). Dr. Scott recommended physical therapy and a TENS unit on a trial basis, with the possibility of referral to a rehabilitation or pain clinic. According to Dr. Scott, "[w]eight loss would be helpful but would not cure this problem" (*id.*).

Plaintiff underwent physical therapy at Cuba Hospital between June and December, 1990, with no significant improvement in her condition (T. 133–38). On October 23, 1990, Dr. Scott reported that plaintiff felt she was getting some benefit from the physical therapy since she could "do some light housework and sit in a chair as long as she can get up and walk around when she needs to" (T. 145). He diagnosed her condition as "[s]everal level degenerative disc disease—chronic" (*id.*). He was of the opinion that plaintiff could not do any kind of physical work, and approved of her plans to start her own business. He suggested she continue with physical therapy (T. 144).

On April 3, 1991, Dr. Scott reported that plaintiff's low back pain was "about the same, but now she has pain between the shoulder blades and it goes up into her neck.... She feels better actually when she is busy or when she is sitting still ..." (T. 144).

On May 3, 1991, Dr. Scott reported that plaintiff was "much better," apparently due in part to his prescription of Voltaren and Flexoril (T. 144). However, on August 2, 1991, Dr. Scott reported that she was experiencing "the same kind of pain that she has been having for the past year and it hasn't changed.... [T]he Voltaren just didn't seem to do anything" (T. 143). He again diagnosed degenerative lumbar disc disease, and recommended another MRI "since it has been gradually getting worse and has been over a year ..." (*id.*).

On August 5, 1991, plaintiff underwent another MRI, which revealed herniation of the disc at L3–4 and posterior bulge of the disc at L4–5 and L2–3 (T. 139).

In a letter to the New York State Department of Social Services Office of Disability Determinations dated January 6, 1992, Dr. Scott reported that plaintiff's "severe back condition ... just hasn't shown any improvement but also there has not been any surgically correctable problem up to this point" (T. 142).

On February 26, 1992, Dr. Scott reported that plaintiff "still has the same pain. Now the right hip area is tingling and numb at times especially when she sits. Recent MRI last summer showed deterioration of 3 discs" (T. 141).

Plaintiff was referred to Dr. Frederick H. Armbrust, a neurological surgeon, for consultative examination on March 12, 1992. Dr. Armbrust's impressions were as follows:

1. Diffuse cervicobrachial syndrome not related to clear cut radiculopathy or myelopathy.

2. Paresthesia in ulnar distribution right hand possibly representing ulnar neuropathy doubt true entrapment.

3. History of degenerative disc disease with chronic low back pain.

4. Chronic headache disorder.

(T. 181). Dr. Armbrust advised plaintiff that despite the fact that the MRI of her neck was "not normal," he did not feel that the findings correlated well enough with her symptoms to justify any type of interventional treatment. He recommended further conservative treatment, primarily anti-inflammatory medication. He also noted that plaintiff did not seem satisfied with his diagnosis and explanation (T. 182).

On April 10, 1992, plaintiff was examined by Dr. Daniel Britton, a neurologist with the Guthrie Medical Group in Corning, New York. Dr. Britton's impression was neck pain with some suggestion of radicular symp-

toms (T. 174). He noted that the x-rays and MRI scan of her neck (*see* T. 163) "showed some disc bulging at C5/6 and question C6/7" (T. 174). He prescribed cervical traction two to three times a day for four to six weeks. In a letter to Dr. Scott dated April 10, 1992, Dr. Britton indicated that there was "some hint of radicular symptoms from the neck . . .," and explained his recommendation of cervical traction (T. 172). He also noted that plaintiff had received a surgical opinion that favored conservative treatment, and that he "would certainly be in favor of that also" (*id.*).

In a letter to the state Office of Disability Determinations dated April 23, 1992, Dr. Scott reported that plaintiff's back pain had "gotten slightly worse over the past few months. It is very difficult for her to do her usual household activities, drive a car, or get in and out of a chair. . . . From my standpoint, I have seen no improvement in her chronic degenerative disc disease" (T. 140). Dr. Scott also noted that plaintiff had recently begun to have "pain in the back of the neck with tingling going down both arms and hands . . .," and that Dr. Britton's recent findings and recommendations might provide helpful information in this regard (*id.*).

Dr. Britton examined plaintiff again on May 28, 1992. He noted her complaints of neck and arm pain, and that the cervical traction he had recommended in April had resulted in some improvement, but no sustained benefit. He advised plaintiff that her x-rays and MRI did not indicate the necessity for surgery, and that this opinion was corroborated by Dr. Armbrust. He also advised her to continue with therapy and stretching exercises of the neck and shoulder (T. 164).

By letter dated June 15, 1992, Administrative Law Judge ("ALJ") John Mowrer of the Social Security Administration Office of Hearings and Appeals requested Dr. Britton to fill out an enclosed form reporting on plaintiff's medical condition and assessing her residual functional capacity to facilitate the adjudication of plaintiff's claim for Social Security benefits (T. 157). Emmy Lowery of the Guthrie Medical Group Business Office

sent ALJ Mowrer the following response: "Dr. Britton has not filled this form out as he does not feel the patient is disabled. I have enclosed copies of his notes" (T. 156).

On July 13, 1992, Dr. Scott wrote to ALJ Mowrer. He indicated that he had recently submitted medical records regarding plaintiff's degenerative lumbar disc disease, and that "[s]ince that time she has begun to have symptoms of degenerative cervical disc disease as well" (T. 161). Based on the medical evidence of both her lower back and neck conditions, Dr. Scott gave the following opinion:

It would be very difficult for her to engage in substantial gainful employment for several reasons. In addition to the lower back pain radiating down the posterior right leg she has developed similar changes in the neck whose symptoms are not quite as severe but appear to be progressing. She has the ulnar nerve problem in the right arm as well.

She is in almost constant pain. She is certainly not capable of doing repeated bending or lifting. At this point it is hard for her to even sit comfortably, let alone doing clerical work involving the use of her arms.

Standing such as would be required to do clerical work for eight hours a day would also be significantly difficult because of continuous pain.

(*id.*).

Meanwhile, on February 1, 1992, plaintiff was notified that her applications for disability insurance and SSI benefits had been denied (T. 50–53, 81–84). On May 4, 1992, she was notified that her request for reconsideration of her disability insurance claim had likewise been denied (T. 74–76).[3] Plaintiff requested a hearing which was held on July 15, 1992 before ALJ Mowrer.

Plaintiff appeared at the hearing without legal representation. She testified that her degenerative disc disease had caused deterioration of four discs and four pads. As a result, she experienced a constant aching pain in her back. She could not sit, stand,

---

**3.** The record does not contain any Notice of Reconsideration of plaintiff's SSI claim.

walk or ride in a car for very long periods (T. 37–38). She also testified that she had pain in her arm and neck due to tendinitis and nerve blockage (T. 39–40). She took 30 mg of Tylenol with codeine four times a day, which helped the pain somewhat (T. 40–41). She prepared morning meals and made sandwiches for her three children, but could not sweep, mop, vacuum, make the beds or do heavy loads of laundry (T. 41). The pain in her arm made it difficult to dress herself or to raise a coffee cup (T. 42–43). She was able to walk one block (T. 44). She could not bend at the waist to pick up an object (T. 44–45). She could not sit for more than five minutes at a time. She could lift a gallon of milk and carry it across the room. She could raise her hands above her head, pull a door open and push it closed, and climb one flight of stairs four times a day (T. 45).

In a decision dated August 17, 1992, ALJ Mowrer found that plaintiff was not disabled within the meaning of the Act (T. 16–22). According to the ALJ, the medical evidence showed that she was hospitalized in February, 1989, with complaints of severe right sciatic pain. A myelogram and CT scan did not reveal any abnormalities (T. 17). Upon release, she was treated by Dr. Scott, who attributed her pain to lumbar disc disease. Dr. Scott treated plaintiff's low back pain conservatively. In August, 1991, she underwent an MRI scan which showed disc herniation and bulging (T. 17).

The ALJ noted that plaintiff was seen by Dr. Armbrust in March, 1992, for evaluation of her complaints of pain related to her neck and right upper extremity. Dr. Armbrust recommended conservative treatment. The ALJ also noted that plaintiff was seen by Dr. Britton in April, 1992, and that Dr. Britton was unable to correlate plaintiff's symptoms of neck pain with the results of an MRI scan of her cervical spine. According to the ALJ, "later contact with Dr. Britton revealed his opinion that the claimant was not disabled" (T. 18). The ALJ also acknowledged Dr. Scott's July 13, 1992 letter reporting on plaintiff's degenerative lumbar and cervical disc disease (id.).

Based on his review of this evidence, the ALJ concluded that plaintiff was capable of performing the full range of sedentary work,[4] and was therefore not disabled at any time through the date of his decision. The ALJ found that, while plaintiff's complaints of back and neck pain were substantiated by the medical evidence, there was also evidence indicating that the pain was not disabling. He noted Dr. Scott's reports indicating some improvement of her condition through physical therapy. He also noted that "[a]t least one physician, Dr. Britton, has declared that she is not disabled at this time" (T. 19). He further noted that, while Dr. Scott's reports indicate plaintiff's inability to do repeated bending or lifting, these reports did not specify that she was incapable of sedentary activities (id.).

The ALJ's decision became the final determination of the Secretary when the Appeals Council denied plaintiff's request for review on April 7, 1993 (T. 3–6). Plaintiff filed this action on June 2, 1993.

### DISCUSSION

■ The Social Security Act states that, upon review of the Secretary's decision by the district court, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (1991). Substantial evi-

---

4. 20 C.F.R. § 404.1567(a) provides:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

According to Social Security Ruling ("SSR") 83–10:

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

dence is defined as evidence which a "'reasonable mind might accept as adequate to support a conclusion'". *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Under these standards, the scope of judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Secretary. *Richardson, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Secretary. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982).

█ The Secretary's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

Plaintiff argues that the ALJ improperly disregarded substantial evidence of plaintiff's disability provided in the several reports of Dr. Scott, her treating physician, and instead gave undue weight to the note from Dr. Britton's office indicating his belief that plaintiff was not disabled. I completely agree.

The Secretary's regulations, binding on this court, *see Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993), provide in pertinent part as follows:

If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [several factors] in determining the weight to give the opinion. We always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The factors to be applied to determine the appropriate weight to be given to the treating physician's opinion are: (1) length of treatment relationship and frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion by relevant evidence or explanation, (4) consistency of the opinion with the record as a whole, (5) whether the treating physician is a specialist, and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(i)–(ii), (d)(3)–(6); *see also Schisler v. Sullivan, supra,* 3 F.3d at 567.

Additionally, the Secretary's Social Security Ruling ("SSR"), approved by the Second Circuit in *Schisler, supra,* discussing the SSA's policy for the evaluation of treating physicians' opinions on a claimant's disability provide that a treating source's opinion on the diagnosis, nature and degree of impairment is (1) binding on the factfinder unless contradicted by substantial evidence, and (2) entitled to some extra weight, even if contradicted by substantial evidence, "because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Id.* at 570, Appendix A (proposed SSR). Where a treating physician's opinion is being rejected or overridden, the determination must reflect (1) a discussion documented in the file of the opinions and medical findings provided by the medical sources, (2) an explanation of how SSA evaluates the reports, (3) a description of any unsuccessful efforts to obtain information from a source, (4) the pertinent nonmedical findings, and (5) an explanation as to why the substantial medical evidence of record contradicts the treating source's opinion. *Id.*

█ The ALJ's determination did not comply with these requirements. He concluded that plaintiff retained the residual functional capacity to perform the full range of sedentary activities, based on Dr. Scott's failure to find otherwise in his reports, and based on Dr. Britton's statement that plaintiff was not disabled.

█ For several reasons, I find that this determination is not supported by substantial

evidence. For one thing, the ALJ did not identify any evidence, medical or otherwise, which indicated plaintiff's ability to perform any of the activities involved in sedentary work, especially the ability to sit for up to six hours out of an eight hour day. Almost all of the medical evidence in the record is to the contrary. Dr. Scott's reports are clear that since the onset of her back problems in December, 1988, plaintiff was in severe pain which prevented her from bending or lifting (T. 150), walking more than a block, sitting in a chair (T. 149), or performing any other activities commonly performed in a "sedentary" job. Virtually every one of Dr. Scott's numerous reports between January, 1989 and July, 1992 discussed the severity of her pain, and how her condition had either improved very little or worsened. Indeed, in his July, 1992 letter to ALJ Mowrer, Dr. Scott stated that it would be very difficult for plaintiff to engage in substantial gainful activity of any type due to her constant pain and inability to bend, lift, sit or stand (T. 161–62). This evidence is clearly in conflict with the ALJ's finding that Dr. Scott's reports did not specify that plaintiff was incapable of sedentary work activities.

The ALJ also relied heavily on "Dr. Britton's statement that the claimant is not disabled" (T. 19). However, this court's review of the medical evidence indicates that Dr. Britton's statement, as well as his medical findings, do not constitute substantial evidence that plaintiff was capable of performing sedentary work or was otherwise not disabled. For one thing, Dr. Britton's consultative examinations, and the x-rays, MRI results and other documentary evidence relied on by Dr. Britton, focused primarily on plaintiff's complaints of pain in her neck and upper extremities. For another thing, Dr. Britton's "statement" regarding plaintiff's disability was actually a "non-statement" reported by an administrator in his office upon Dr. Britton's apparent decision not to fill out the residual functional capacity assessment requested by the ALJ. The statement is not supported by any relevant discussion, documentation, or pertinent medical findings.

Nor did the ALJ explain why the statement was entitled to the weight he gave it.

The Secretary concedes that the ALJ erred in failing to give proper weight to Dr. Scott's July, 1992 evaluation of plaintiff's inability to perform any type of substantial gainful activity, and that the SSI claim should be remanded for rehearing pursuant to sentence four of § 405(g) of the Act.[5]

As to the application for disability insurance benefits, the Secretary contends that the ALJ's denial must be upheld since plaintiff's insured status expired on June 30, 1989, and that the medical evidence does not establish disability as of that date.

 In light of the ALJ's misapplication of the treating source rules, and the ALJ's reliance on an "opinion" not supported by substantial evidence, both claims should be remanded to the Secretary. It is not clear from a reading of Dr. Scott's July, 1992 letter that his opinion was rendered solely with regard to plaintiff's condition subsequent to the expiration of her insured status. Nor is it clear from the medical evidence in the record that plaintiff's condition was not disabling as of the alleged onset date but became disabling at some point after June 30, 1989. To the contrary, Dr. Scott reported in January, 1989 that plaintiff was "disabled since this began" (T. 150). Dr. McGee's initial impression in February, 1989, was disc herniation (T. 127), although subsequent testing did not confirm this diagnosis. Dr. Scott's report on June 16, 1989, was that even though the recent myelogram did not show disc herniation, it did show "some weakening of discs," that plaintiff was in "continuing pain," that she could not bend, walk or sit in a chair, that there was no way she could continue her previous job duties, and that she "remains disabled" (T. 149). Almost invariably, Dr. Scott's subsequent reports comment on the fact that plaintiff's condition remained unchanged (June 30, 1989: "Still having back pain. No better, no worse" (T. 148); July 18, 1989: "Still having pain … [t]his will be a chronic condition"

---

5. Sentence four of § 405(g) provides:
 The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

(*id.*); September 25, 1989: "Low back pain ... something she will always have to deal with" (*id.*); December 18, 1989: "[N]o improvement" (T. 147); March 7, 1990: "Back pain is about the same as it has been right along" (T. 146); April 3, 1991: "[L]low back pain is about the same ..." (T. 144); August 2, 1991: "She is putting up with the same kind of pain that she has been having for the past year and it hasn't changed" (T. 143); January 6, 1992: "She just hasn't shown any improvement ..." (T. 142); February 26, 1992: "She still has the same pain" (T. 141); April 23, 1992: "[N]o improvement in her chronic degenerative disc disease" (T. 140)).

Accordingly, based upon my review of the record as a whole, I find that the ALJ's determination that plaintiff was not disabled because she retained the capacity to perform sedentary work activities is not supported by substantial evidence, and was rendered upon misapplication of the standards for evaluating the opinions of plaintiff's treating sources. I therefore recommend that the district court remand the case to the Secretary for reconsideration of plaintiff's disability insurance and SSI applications. *See, e.g., Aubeuf v. Schweiker,* 649 F.2d 107 (2d Cir. 1981).

Plaintiff's second argument is that the ALJ failed to make specific findings on plaintiff's credibility and that therefore the case should be reversed based on *Williams v. Bowen,* 859 F.2d 255 (2d Cir.1988). I find that it is unnecessary to resolve this issue due to the recommendation of remand discussed above. Furthermore, I find that the issue of credibility can be further evaluated on remand, and that reversal is not required on this record.

### *CONCLUSION*

For the above reasons, it is recommended that the Secretary's motion for judgment on the pleadings be denied, and the Secretary's motion for remand be granted.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

So Ordered.

DATED: Buffalo, New York .

February 15, 1994.