Sue A. BOSLEY, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 93–CV–487C.

United States District Court, W.D. New York.

March 9, 1995.

Jeffrey Freedman (Paul M. Pochepan, of counsel), Buffalo, NY, for plaintiff.

Patrick H. NeMoyer, U.S. Atty. (Russell P. Buscaglia, Asst. U.S. Atty., of counsel), Buffalo, NY, for defendant.

## DECISION AND ORDER

CURTIN, District Judge.

Plaintiff Sue A. Bosley appeals from a decision of the Defendant Secretary of Health and Human Services which granted her disability insurance benefits under the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*, from October 11, 1989, to October 31, 1991, but denied benefits thereafter.

Ms. Bosley applied for disability insurance benefits on October 25, 1991. The application was denied initially on February 6, 1992, and upon reconsideration on May 11, 1992. A.R. 70–72, 97–99.[1] Ms. Bosley then requested a hearing, which was held on August 17, 1992. A.R. 41–65. On September 4, 1992, Administrative Law Judge ("ALJ") John C. Mowrer issued a decision finding

---

1. Citations to the administrative record will be abbreviated as "A.R.," followed by the appropriate page number.

that Ms. Bosley had been entitled to a period of disability commencing on October 11, 1989. A.R. 19–24. Based upon a determination that Ms. Bosley's disability ceased on October 31, 1991, the ALJ ruled that Ms. Bosley's entitlement to a period of disability and disability insurance benefits ended on December 31, 1991. A.R. 24. That decision became the final decision of the Secretary when the Appeals Council denied Ms. Bosley's request for review on April 9, 1993. A.R. 4–5.

Both parties have moved for judgment on the pleadings. Items 5–7. At oral argument on August 19, 1994, I observed that there was a question as to whether the ALJ had employed the correct legal standard, under 42 U.S.C. § 423(f) and 20 C.F.R. § 404.1594, in determining that Ms. Bosley's disability ceased on October 31, 1991. Item 11. I asked both parties to provide me with notes on that issue. *Id.* They have now done so. Items 12, 14.

### FACTS

#### A. The Plaintiff

Sue A. Bosley is a 39–year–old woman who suffered a lower back injury in a slip-and-fall accident at work on September 18, 1989. A.R. 184. She claims to have become disabled shortly thereafter, on October 11, 1989. A.R. 66. At the time of her accident, she was employed as a short-order cook. A.R. 48. Previously, she had worked as a home health care aide, a school bus driver, a grocery store manager, and a nursing home dietary aide. A.R. 124–29. She has a General Equivalency Diploma ("GED"), and has taken some college coursework. A.R. 47–48. She has not worked since the date of her injury. A.R. 48–50.

#### B. Medical Evidence

##### 1. Before October 31, 1991

There is no real dispute over the medical evidence in this case. Following her accident on September 18, 1989, Ms. Bosley was initially treated for lower back pain by a chiropractor, without improvement. A.R. 218. Between November 8, 1989, and June 18, 1990, she was seen and evaluated on numerous occasions by four orthopedic surgeons,

Donald J. Nenno, M.D., A.R. 218, Edward D. Simmons, M.D., A.R. 178–83, Charles R. Schen, M.D., A.R. 130–34, and Eugene E. Cisek, M.D., A.R. 138–42, and by a neurologist, Patrick J. Hughes, M.D., A.R. 135–37.

On June 25, 1990, she again visited Dr. Simmons. He noted that Ms. Bosley had been observed and treated conservatively for almost ten months, but that she had not improved and felt that her condition had worsened. A.R. 176. There was objective evidence of lower back disability and nerve root irritation, and an MRI scan had confirmed "the markedly degenerative discs at L4–5 and L5–S1 associated with some degree of herniation." *Id.* Dr. Simmons requested approval to perform an L4–5 and L5–S1 discectomy and fusion. *Id.* at 176–77. *See also,* A.R. 145.

Surgery was performed by Dr. Simmons on September 25, 1990. A.R. 145–46. Ms. Bosley tolerated the procedure well, and the perioperative course was unremarkable. A.R. 144. She was discharged from hospital on October 6, 1990. *Id.* Follow-up visits with Dr. Simmons were conducted on five occasions between November 12, 1990, and October 7, 1991. A.R. 167–73.

On April 10, 1991, Dr. Simmons found that the fusion mass had consolidated well, and that Ms. Bosley "continue[d] to do quite well with regard to her lower back." A.R. 170. He noted, however, that she reported pain in her left buttock and left groin area, which radiated down the left anterior thigh. X-rays of her left hip showed a slight inferior osteophytic formation. Examination of the hip revealed tenderness on palpation over the anterior hip. Ms. Bosley experienced pain when she tried to extend the hip fully while lying in a supine position, with abduction and flexion, and with internal or external rotation, all centered in the hip area. Dr. Simmons viewed Ms. Bosley's current problems as stemming from the left hip. *Id.* He recommended a bone scan in order to evaluate the hip, and noted that once a scan had been done, a decision could be made regarding Ms. Bosley's return to work. A.R. 171. At that time, she was unable to return to her former employment. *Id.*

After examining Ms. Bosley on May 1, 1991, Dr. Simmons noted that a bone scan had been done, and had revealed no abnormalities. A.R. 169. Ms. Bosley continued to do well in regard to her lower back, though she was still experiencing some pain in the left hip area and over the groin. Physical therapy was to be resumed. Dr. Simmons noted that he would see Ms. Bosley again in two months, and expressed the view that at that time she would most likely be ready to return to work. *Id.*

On July 1, 1991, Dr. Simmons again examined Ms. Bosley. A.R. 168. She was continuing to do well, and had no problems with lower back pain. However, she was experiencing a sensation of weakness in her lower left extremity. On physical examination, she had very slight decreased power of dorsiflexion and plantar flexion of the left compared to the right side, revealed by repetitive toe raises and heel walking. She felt that she was unable to stand long enough to do her former job. Dr. Simmons recommended that she undergo vocational rehabilitation counseling, and opined that "she would be best suited for a desk type job where she doesn't have to stand for long periods of time." *Id.*

After a further examination on October 7, 1991, Dr. Simmons reported that Ms. Bosley was "doing quite well with regard to her lower back pain with good improvement compared to her pre-operative state. She still has some sensation of weakness in her left lower extremity and as well, has described some flushing sensations and pain radiating up into her upper thoracic spine and upper extremities occasionally." A.R. 167. He noted that she was undergoing vocational rehabilitation, and stated that "I think she should have reasonable prospects in terms of getting some form of work not requiring prolonged standing." *Id.*

The record contains the report of a neurologist, Kailash C. Lall, M.D., dated October 23, 1991. A.R. 164–66. Dr. Lall's examination of Ms. Bosley apparently revealed no neurological problems. However, he noted that there was tenderness in the midlumbar region, and that "she still has chronic low back pain which usually gives rise to the pain going down into the left lower extremity."

He expressed the view that she was "still partially disabled." A.R. 165.

### 2. *After October 31, 1991*

Ms. Bosley's family physician, John C. Stubenbord, M.D., examined her on November 21, 1991. A.R. 184–91, 195. On a report to the Workers' Compensation Board, he noted that she had numbness of her legs and cold feet. A.R. 195. She was experiencing pain, mainly in her lower back, left hip area, and left leg. She had weakness in her left leg, and a tender left sciatic notch. She could flex her back to 150 degrees with pain. Dr. Stubenbord marked a box on the report form indicating that Ms. Bosley was totally disabled at that time. *Id.* In a report for the New York State Department of Social Services, Office of Disability Determinations, based upon the same examination, Dr. Stubenbord noted that Ms. Bosley had a healed scar in her lumbrosacral region, that there was tenderness in both the left and the right paravertebral areas lateral to the scar, and that she experienced left sciatic notch tenderness. A.R. 184. He noted that wearing a brace helped Ms. Bosley in both standing and sitting. A.R. 185. In his opinion, she was unable to lift or carry any weight. A.R. 188. She could stand and/or walk for less than two hours per day, and should not stand for more than 15 minutes, or stoop. She could sit for less than six hours per day, and should not push or pull. *Id.*

In a workers' compensation report based on an examination on January 8, 1992, Dr. Stubenbord noted numbness of the left leg, and cold feet. A.R. 194. He indicated that Ms. Bosley was still experiencing pain in her lower back and left hip, and that her left sciatic notch was still tender. She was able to flex her back to 90 degrees with pain. The doctor again marked a box indicating that Ms. Bosley remained totally disabled. *Id.*

On April 1, 1992, Dr. Stubenbord submitted a further report to the New York State Department of Social Services, Office of Disability Determinations, based on an examination carried out on that day. A.R. 208–17. Ms. Bosley's current symptoms were described as persistent low back pain, to left

hip. A.R. 208. She still had left sciatic notch tenderness. A.R. 209. She was able to straight leg raise to 70 degrees on the right and to 60 degrees on the left, with pain. *Id.* Dr. Stubenbord again indicated that she could lift and carry no weight, that she could stand and/or walk for less than two hours per day, that she could sit for less than six hours per day, and that she should not push or pull. A.R. 216–17.

In a letter dated August 9, 1992, Dr. Stubenbord noted that Ms. Bosley continued to experience numbness in her left leg· and pain in her left hip and lower back. A.R. 222–23. She had pain on extension of her left leg, diminished reflexes of her left leg, and tender left sciatic notch. The doctor indicated that her prognosis was guarded until the results of an epidural injection were known. He expressed the view that Ms. Bosley was unable to return to her former work, and that she had been "totally disabled from 9/18/89 until the present." It was, however, possible that she could do a desk job if properly trained, and if the epidural injection helped her back. He noted that at that time, Ms. Bosley was using Tylenol for pain, as needed. This helped her "only to a certain extent." *Id.*

Also in the record is a psychiatric report prepared by Mary T. Spinks, M.D., and Kathy McCadden, R.N., dated January 22, 1992, based on Ms. Bosley's treatment at the Southtowns Counseling Center between October 14, 1991, and January 20, 1992. A.R. 196–205. The report noted that Ms. Bosley had been visiting the Center "off and on" for depression and anxiety. She had returned for treatment on October 14, 1991, due to recurrence of depression, with symptoms of insomnia, extreme tearfulness, low energy, poor concentration and motivation, and subjective dysphoria and fear. A.R. 196. She was treated with medication, received individual supportive psychotherapy weekly, and attended a weekly support group. Her mood and level of functioning had improved by January 22, 1992, but at that time she continued to experience fear and anxiety. *Id.*

In an undated report, identified by the ALJ as having been made in June 1992, A.R. 21, Ms. McCadden stated that:

Mrs. Bosley's current mental status would not seriously affect her vocational functioning. She is prone to anxiety when subjected to high levels of stress (e.g. multiple or conflicting demands, unclear expectations). It is much more likely that her physical limitations would impact on her ability to do certain kinds of work for extended periods of time.

A.R. 221.

### C. Ms. Bosley's Testimony

At her administrative hearing on August 17, 1992, Ms. Bosley testified that she could neither sit nor stand for extended period of time, and could not lift. A.R. 50. She described shooting pains going from her lower back into her buttocks, and radiating down into her left leg and foot. A.R. 51. She experienced these pains daily. *Id.* To obtain relief, she would get up and walk around, or sometimes lie down on her bed for a few minutes. A.R. 52. The pain would sometimes recur within 30 minutes. *Id.* She described being extremely depressed and lacking in energy. *Id.* She was very limited in her activities. She cooked only two or three times a week for her family, did not sweep, mop, make beds, vacuum, do the laundry, or do any grocery shopping. A.R. 58. She spent much of her time watching television, and working on hand crafts. *Id.* She could walk for short distances—two to three city blocks—but could stand for only five to ten minutes without support. A.R. 61. She could not bend at her waist to pick an object up from the floor, and had difficulty kneeling. *Id.* She was able to carry books, and lift and carry a gallon of milk, but she stated that her doctor had recommended not lifting any weights. *Id.* She could climb stairs, but doing so would bring on pain in her hip. A.R. 62.

### DISCUSSION

#### A. Standard for Entitlement to Benefits

■ A claimant is considered disabled under the Act if she can demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *White v. Secretary of Health and Human Services,* 910 F.2d 64, 65 (2d Cir.1990). Her impairment must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *White,* 910 F.2d at 65. The claimant has the initial burden of proving that her impairment prevents her from returning to her past work, but thereafter the burden shifts to the Secretary to prove that she can engage in alternative employment. *White,* 910 F.2d at 65 (citing *Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984); *Ferraris v. Heckler,* 728 F.2d 582, 586–88 (2d Cir.1984)).

In evaluating disability claims, the Secretary generally employs the five-step sequence described in 20 C.F.R. § 404.1520. The Second Circuit has described the procedure as follows:

"First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform."

*Bluvband v. Heckler,* 730 F.2d at 891 (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)). The claimant bears the burden of proof as to the first four steps, but the Secretary must prove the final one. *Id.*

The final step in the Secretary's evaluation entails consideration of the claimant's age, education, and past work experience, and of her "residual functional capacity" to work. 20 C.F.R. § 404.1520(f). The term "residual functional capacity" means "what [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a). It is a medical assessment, although it properly includes a description (even a claimant's own) of limitations that go beyond the symptoms that may be important in the diagnosis and treatment of the claimant's medical condition. *Id.* It is a measure of a claimant's capacity to work, and may include an assessment of physical abilities, mental impairments, and other impairments. 20 C.F.R. §§ 404.1545(b), (c), and (d).

A recipient may lose her eligibility for benefits under the Act if there is a significant improvement in her condition:

A recipient of benefits ... may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—

(1) substantial evidence which demonstrates that—

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f). *See Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir.1993); *Fleming v. Sullivan,* 806 F.Supp. 13, 14–15 (E.D.N.Y. 1992). The regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be

disabled." 20 C.F.R. § 404.1594(b)(1). A determination that a medical improvement has occurred "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id; see also,* 20 C.F.R. § 404.1594(c)(1). For purposes of determining whether medical improvement has occurred, the Secretary "will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7). *See also,* 20 C.F.R. § 404.1594(c)(1); *Glenn v. Shalala,* 21 F.3d 983, 986 (10th Cir.1994); *Fleming v. Sullivan,* 806 F.Supp. at 14–15.

In evaluating medical evidence, the Secretary will give controlling weight to a treating physician's opinion of the nature and severity of a claimant's impairment, when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993).

### B. Scope of Judicial Review

■ This court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Secretary's factual determinations are conclusive if they are supported by substantial evidence on the record as a whole. *Id; Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Alston v. Sullivan,* 904 F.2d at 126 (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). To determine whether the Secretary's findings are supported by substantial evidence, the court must consider "the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983)). Where evidence has not been properly evaluated because of an erroneous view of the law, the determination of the Secretary should not be upheld. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

■ Meaningful review of a disability determination requires that the Secretary articulate reasons for accepting or rejecting entire lines of evidence. *Wachter v. Shalala,* 856 F.Supp. 140, 144 (W.D.N.Y.1994) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994)). The determination must be based upon consideration of all of the relevant evidence, and where items of pertinent weight have been missed, the decision should not be upheld. *Id.* (citing *Herron v. Shalala,* 19 F.3d at 333; *State of New York on Behalf of Bodnar v. Secretary of Health and Human Services,* 903 F.2d 122, 126–27 (2d Cir. 1990)).

### C. The ALJ's Decision

The ALJ found that Ms. Bosley met the disability insured status requirements of the Act on October 11, 1989, the date on which she claimed to have become unable to work, and continued to meet those requirements. A.R. 22. He determined that she had not engaged in substantial gainful activity since October 11, 1989, and that she was unable to perform her past relevant work. A.R. 22, 23. Her back condition "met Listing 1.05C of Appendix 1 because of her herniated disc in the lumbosacral spine which necessitated surgery in September 1990." A.R. 21. However, the ALJ found that the back fusion went on to heal, and that by October 31, 1991, Ms. Bosley had regained the residual functional capacity to perform sedentary work.[2] A.R. 22, 23. This capacity was re-

---

**2.** Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined

duced, but not to a significant extent, by her depression and associated inability to tolerate undue stress. *Id.*

Based upon his finding that Ms. Bosley had regained the capacity to perform sedentary work, and taking into account her age, education, and work experience, the ALJ found that 20 C.F.R. § 404.1569 and Rule 201.27, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, directed a conclusion of "not disabled." A.R. 23. He determined that Ms. Bosley was under a disability, as defined under the Act, beginning on October 11, 1989, and continuing until October 31, 1991, and that her entitlement to a period of disability and disability insurance benefits ended on December 31, 1991. A.R. 23–24.

### D. Judgment on the Pleadings

■ In support of her motion for judgment on the pleadings, Ms. Bosley argues that she remained disabled after October 31, 1991. She maintains that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Stubenbord, and that he erred in his assessment of her pain and functional limitations. Item 7. The Secretary argues that the ALJ's decision was supported by substantial evidence, and should be affirmed. Item 6.

Neither party disputes the ALJ's determination that Ms. Bosley was disabled from October 11, 1989, until October 31, 1991, and that she was entitled to a period of disability and benefits based upon that disability. What is at issue, therefore, is whether the ALJ erred in reaching the conclusion that Ms. Bosley's disability ended on October 31, 1991. I find that he failed to apply the correct legal standard in making that determination, that he gave inadequate consideration to the evidence in the record relating to the period after October 31, 1991, and that such evidence fails to support a finding that Ms. Bosley's disability ended on that date.

I note first of all that in reaching his decision that Ms. Bosley was no longer disabled after October 31, 1991, the ALJ made no explicit reference to the statutory or regu-

latory provisions governing the termination of benefits. The Secretary contends, nevertheless, that he did, in fact, apply the correct standard under 20 C.F.R. § 404.1594(a). Item 14, pp. 1–2. It is clear enough, however, that the Secretary is wrong.

For purposes of terminating benefits, a decision that a benefit recipient's disability has ceased must be supported by substantial evidence demonstrating (1) that there has been an improvement in the recipient's medical condition, relating to her ability to work, and (2) that the recipient has regained her ability to engage in substantial gainful activity. 42 U.S.C. § 423(f). Regarding the first part of this test, the regulations make it clear that the relevant inquiry is whether there has been an objective decrease in the severity of the recipient's condition *since the most recent medical determination that she was disabled or continued to be disabled.* 20 C.F.R. §§ 404.1594(b)(1), (b)(7), (c)(1); *Fleming v. Sullivan,* 806 F.Supp. at 15. In the present case, the ALJ found that Ms. Bosley's medical condition was sufficiently severe to render her disabled through October 31, 1991. But he made no comparison of the medical evidence relating to the period after October 31, 1991, with the most recent evidence establishing disability in the period before that date. Indeed, his only reference to the evidence of Ms. Bosley's continuing back problems after October 31, 1991, was as follows:

> She is being followed by both Dr. Stubenbord and Dr. Simmons regarding her back condition. She is unable to work in her former occupation which involved significant standing and lifting. It is possible that she could do a desk job especially if she was properly trained for one. Presently she uses Tylenol for relief of her back pain as needed and it has been helpful to a certain extent.

A.R. at 21 (referring to Ex. 28, A.R. 222–23). He made no mention of Dr. Stubenbord's reports of the November 21, 1991, January 8, 1992, and April 1, 1992, examinations, or of

as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

the medical evidence contained in those reports.

The Secretary argues that the evidence demonstrates that Ms. Bosley did well postoperatively and experienced significant improvement as a result of her surgery. Item 14, p. 2. She suggests that Dr. Simmons' reports of April, May, July, and October 1991 indicate that during that period, Ms. Bosley's condition had improved to a point at which it was no longer severe enough to support a finding of disability. *Id.* at 2–3. The difficulty with this line of argument is that the ALJ determined that Ms. Bosley's impairment continued to be sufficiently severe to support a finding of disability *through October 31, 1991,* and that part of his decision is not disputed in the present action. What is lacking in the ALJ's analysis is any finding that there was substantial evidence of a medical improvement in Ms. Bosley's condition between October 1991 and any time thereafter. He simply failed to apply the correct analysis under 42 U.S.C. § 423(f) and 20 C.F.R. § 404.1594.

As noted above, the second part of the test for deciding whether a benefit recipient's disability has ceased involves a determination that substantial evidence supports a finding that the recipient has regained her ability to engage in substantial gainful activity. 42 U.S.C. § 423(f). The Secretary bears the burden of proof in this regard. *Glenn v. Shalala,* 21 F.3d at 987 (citing 20 C.F.R. §§ 404.1594(b)(5), (c)(3)(i), and (d)). In the present case, the ALJ found that since October 31, 1991, Ms. Bosley's residual functional capacity had improved to the point where she could perform sedentary work. A.R. 22, 23. In reaching this conclusion, however, he neglected to discuss the contrary reports and opinions of Dr. Stubenbord, Ms. Bosley's family physician. Dr. Stubenbord made it clear in reports issued between November 21, 1991, and April 1, 1992, that Ms. Bosley was unable to lift or carry any weight, that she could stand and/or walk for less than two hours per day, that she could sit for less than six hours per day, and that she should not push or pull. These restrictions indicate that during the period in question there were significant constraints on Ms. Bosley's capacity to perform even sedentary work. *Cf.* 20 C.F.R. § 404.1567(a); *supra,* n. 2. And in-

deed, Dr. Stubenbord indicated in several of his reports that Ms. Bosley remained totally disabled. None of this evidence was discussed by the ALJ. In addition, while the ALJ stated that he found Ms. Bosley's hearing testimony credible, A.R. 23, he referred to that testimony only cursorily in his decision, A.R. 21, and seems to have ignored, for the most part, Ms. Bosley's account of her physical limitations. I am unable to conclude that he gave proper consideration either to Dr. Stubenbord's reports or to Ms. Bosley's testimony. Therefore, I cannot affirm his finding that Ms. Bosley had regained the ability to work by October 31, 1991. *Cf., Wachter v. Shalala,* 856 F.Supp. at 144, 146–47.

Ms. Bosley argues that Dr. Stubenbord was her treating physician in the period after October 31, 1991, and that the ALJ failed to give proper weight, under 20 C.F.R. § 404.1527(d)(2), to his statements that she remained totally disabled at that time. Item 7, pp. 6–10. The Secretary, in response, maintains that the statements were made in the context of reports to the Workers' Compensation Board, and that the ALJ was entitled to disregard any of the doctor's conclusions as to Ms. Bosley's disability for workers' compensation purposes. Item 14, p. 3 (correctly citing *Coria v. Heckler,* 750 F.2d 245, 247 (3d Cir.1984)). But of course, what the ALJ was *not* entitled to do was disregard, or neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in Dr. Stubenbord's reports. 20 C.F.R. § 404.1527(d)(2); *Schisler v. Sullivan,* 3 F.3d at 567–69; *Coria v. Heckler,* 750 F.2d at 248; *Wachter v. Shalala,* 856 F.Supp. at 144.

I have reviewed the entire record, and find that it contains insufficient evidence to support a conclusion that there was a decrease in the severity of Ms. Bosley's impairment at any time after October, 1991. There is simply no indication in Dr. Stubenbord's reports for the period from November 1991 to August 1992 that Ms. Bosley's condition was improving. In August, 1992, Dr. Stubenbord wrote that Ms. Bosley had been "totally disabled from 9/18/89 *until the present."* A.R. 223 (emphasis added). That opinion was supported by his medical observations as Ms. Bosley's treating physician, and was not con-

tradicted by medical evidence from any other source. The Secretary has therefore failed to meet the requirements of the first part of the test for terminating a recipient's benefits under 42 U.S.C. § 423(f).

I also find that the record does not support a conclusion that the Secretary met her burden of showing, under the second part of the test under 42 U.S.C. § 423(f), that Ms. Bosley regained the ability to engage in substantial gainful activity on or after November 1, 1991. As noted above, the evidence, consisting mainly of Dr. Stubenbord's reports and Ms. Bosley's hearing testimony, strongly suggests that during that period there were significant constraints on Ms. Bosley's capacity to perform even sedentary work.[3] Under the circumstances, the ALJ erred in finding that Ms. Bosley regained the capacity to perform essentially the full range of sedentary work by October 31, 1991, and in relying on 20 C.F.R. § 404.1569 and Rule 201.27, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, to reach a conclusion that she was not disabled. An individualized evaluation, employing the services of a vocational expert to testify as to Ms. Bosley's ability to perform particular jobs, should have been undertaken. *Cf. Nelson v. Bowen,* 882 F.2d 45, 49 (2d Cir.1989).

### CONCLUSION

For the reasons given above, the Secretary's motion for judgment on the pleadings, Item 5, is denied. Ms. Bosley's motion for judgment on the pleadings, Item 7, is granted. The Secretary's decision that Ms. Bosley's disability ended on October 31, 1991, is reversed. Since I find that there is insufficient evidence in the record to support the termination of Ms. Bosley's benefits under 42 U.S.C. § 423(f), this case is remanded solely for the purpose of computation of benefits for the period after December 31, 1991.

So ordered.

---

**3.** Dr. Stubenbord did note in August 1992 that Ms. Bosley might be able to do a desk job if properly trained, but he made it clear that this would depend on whether an epidural injection helped ease the pain in her back. The record contains no evidence as to whether Ms. Bosley responded favorably to, or even received, an epidural injection.