J u n e 6 , 1 9 9 6
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT



No. 95-2300

GEORGE RICE, JR.,
Plaintiff, Appellant,

v.

SHIRLEY S. CHATER,
Commissioner of Social Security,
Defendant, Appellee.



ERRATA SHEET

The opinion of this Court issued on May 29, 1996 is
amended as follows:

On the cover sheet, the district court judge should be
changed from [Hon. Francis J. Boyle, Senior U.S. District Judge] 
to [Hon. Robert W. Lovegreen, U.S. Magistrate Judge]. 

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT



No. 95-2300

GEORGE RICE, JR.,

Plaintiff, Appellant,

v.

SHIRLEY S. CHATER,
Commissioner of Social Security,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Robert W. Lovegreen, U.S. Magistrate Judge] 



Before

Torruella, Chief Judge, 
Cyr and Stahl, Circuit Judges. 



Gretchen Bath on brief for appellant. 
Sheldon Whitehouse, United States Attorney, Anthony C. Digioia, 
Assistant U.S. Attorney, and Gerald Luke, Attorney, Social Security 
Administration, on brief for appellee.



May 29, 1996


Per Curiam. Appellant George Rice appeals from the 

district court's decision affirming the termination of Rice's

disability benefits by the Commissioner of Social Security

("Commissioner"). We vacate the decision and remand. 

1. Erroneous Legal Standard Applied 

Rice was determined to be disabled as of January

1976 because he was found to have a urinary-kidney impairment

which met or equalled then Listing 6.04. Under that listing,

claimants with a permanent urinary diversion and progressive

bilateral hydronephrosis were considered disabled.1 The 1

administrative law judge ("ALJ") determined that Rice's

impairment had medically improved by October 1990, justifying

termination of his disability benefits. 

Under the regulations, medical improvement is

defined as "any decrease in the medical severity" of an

impairment, and any such decrease "must be based on changes

in the symptoms, signs and/or laboratory findings" associated

with the claimant's impairment. See 20 C.F.R.  

404.1594(b)(1). To find medical improvement, the

Commissioner must compare the prior and current medical

evidence to determine whether there have been any such

changes in the signs, symptoms and laboratory findings

associated with the claimant's impairment. Id. (b)(7), 

 

1As the Commissioner argues, there is substantial evidence 1
to support the determination below that the applicable
listing was Listing 6.04.

-3-

(c)(1). The ALJ did not make this comparison in finding

medical improvement in Rice's impairment, but focused instead

on the question whether Rice continued to meet Listing 6.04

in 1990. In doing so, he erred.2  2

2. Lack of Medical Improvement 

Rice argues that the symptoms, signs and laboratory

findings associated with his impairment did not change from

1976, when he was found disabled, to 1990, when his benefits

were terminated, precluding termination of his benefits on

the basis of medical improvement. We agree.

The laboratory findings evidencing Rice's renal

functioning in 1990 and thereafter were comparable to the

pre-1976 laboratory findings. Creatinine in 1990 was 2.6,

comparable to the 1969 creatinine of 2.84 and within the

other pre-1976 creatinine values of 1.0 and 3.8.3 3

Creatinine after 1990 continued to come within the pre-1976

 

2The regulations clearly require the Commissioner to 2
compare a claimant's current and prior symptoms, signs and
laboratory findings in determining medical improvement. Only
if those indicia of the severity of an impairment have
changed, i.e., improved, may benefits be terminated on the 
basis of medical improvement. The question whether a prior
listing continues to be met plays at best a subordinate role
in determining medical improvement and is not determinative.
Once medical improvement has been shown, a claimant's failure 
to meet a prior listing suffices to show that medical
improvement is related to ability to work, a separate issue 
which is not even considered until medical improvement has
been established, as provided in the regulations. See 20 
C.F.R. 404.1594(b)(1), (c)(1), (c)(3)(i), (f)(3) & (4).

3The record indicates that creatinine levels greater than 3
1.5 mg./dec. are considered abnormal.

-4-

figures, ranging from 2.6 to 3.3. In 1990, blood urea

nitrogen was 18, a value which was within the pre-1976 range

of 12 to 47.4 After 1990, blood urea nitrogen also remained 4

within the range of pre-1976 values, fluctuating between 29

and 45. Rice's precise renal status was unknown as of 1990.

But, in 1992, he was diagnosed with renal failure as he had

been in 1973; he was also found to have advanced

hydronephrosis and a markedly hydronephrotic kidney, similar

to the 1968 and 1969 characterizations of his hydronephrosis

as marked or severe. When questioned as to what the clinical

findings showed about Rice's impairment, the medical expert

answered that he found no evidence of change in Rice's

condition from January 1976 to the fall of 1990. On the

basis of the above, it seems evident that there was no

medical improvement in Rice's condition from 1976 to 1990, as

that term is defined in the regulations. See 20 C.F.R.  

404.1594(b)(1) & (7). 

Under the circumstances present in this case,

Rice's failure to seek treatment from 1973 to 1990 is not

evidence of medical improvement. As noted, changed symptoms, 

signs and laboratory findings are the only relevant indicia 

of medical improvement under the regulations. Id.  

404.1594(b)(1) & (7), (f)(3). While the medical expert may

 

41976 Listing 6.02A indicates that blood urea nitrogen of 4
30 mg./100 ml. or greater would be considered abnormal.

-5-

have speculated that a failure to seek treatment for a

deteriorating impairment could denote medical improvement, on

the basis of the actual clinical findings in the record, he

stated only that Rice's condition had remained the same

(i.e., not changed) from 1976 to 1990. Moreover, Rice sought

no treatment for his impairment for the two-and-one-half year

period preceding the January 1976 finding of disability, a 

factor never taken into account by the ALJ and ignored by the

Commissioner on appeal. Given Rice's failure to seek

treatment for a substantial period of time preceding the

determination that he was disabled, his continuing failure to 

seek treatment is not evidence of change or improvement in 

his impairment. See 20 C.F.R. 404.1594(b)(7) (in 

determining medical improvement, the claimant's current

condition is compared with his condition as of the date of

the original disability decision); Bosley v. Shalala, 879 F. 

Supp. 296, 304 (W.D.N.Y. 1995) (improvements in a claimant's

condition which precede the date on which disability is found

cannot be used as evidence that the disability has ceased

since the regulations require comparison of the claimant's

current condition with his condition as of the date

disability was found); accord Fleming v. Sullivan, 806 F. 

Supp. 13, 15 (E.D.N.Y. 1992).

Furthermore, because Rice's creatinine levels from

1990 and from 1992-93 were commensurate with his pre-1976

-6-

creatinine, i.e., had not changed, they cannot be cited as

evidence of medical improvement. The Commissioner argues

that the stability of creatinine levels shows medical

improvement because Rice's condition was deteriorating in

1976. We see two problems with her argument. First, she is

essentially arguing only that Rice's prognosis had improved

as of 1990 since his condition did not continue to worsen.

But the regulations require actual physical improvement in a

claimant's impairment, not merely an improved prognosis.

Second, her claim that Rice's condition was deteriorating in

1976, when he was found disabled, seems doubtful. As noted,

Rice sought no medical treatment from mid-1973 to January

1976. In addition, the medical expert testified that the

medical records indicated that Rice's condition had remained

stable from before 1976 to 1990. The medical expert further

stated that there was nothing in the record by which he could

judge whether Rice had progressive hydronephrosis in 1976. 

The last medical records suggesting that Rice's

hydronephrosis was increasing dated from 1969, seven years

before he was found disabled.5 5

 

5Thus, the ALJ's approach in this case was not only 5
legally erroneous, but it was flawed for other reasons as
well. Unless Rice actually had progressive hydronephrosis in
1976, it is not at all clear how the fact that he did not
have it in 1990 could evidence medical improvement. Yet the
ALJ never examined the evidence to determine whether Rice
actually had progressive hydronephrosis in 1976, but
apparently assumed that the 1976 determination that Rice met
Listing 6.04, which required progressive hydronephrosis, must

-7-

3. Remand 

Given the lack of medical improvement in Rice's

impairment, the Commissioner could not terminate his benefits

without showing application of an exception under 20 C.F.R. 

404.1594(d) or (e), see 42 U.S.C. 423(f); 20 C.F.R.  

404.1594(a), (f)(3), (5), a question which was not considered

below and has not been argued on appeal. On remand, the

Commissioner may wish to consider that question.

The decision of the district court is vacated. We 

remand to the district court with directions to remand the 

case to the Commissioner for further proceedings consistent 

with this opinion.  

 

be correct.

-8-